DOYLE and another, Respondents, vs. THE ROTH MANU-
FACTURING COMPANY, Appellant.

*January 31 — February 25, 1890.*

'*Sale of chattels: Delivery: Bill of lading in vendor's name.*

Where by a contract of sale the goods were to be shipped to Milwau-
kee and to be paid for by draft at five days sight after their re-
ceipt by the vendee, the vendors were bound to deliver the goods
in such a way that the vendee could demand the same from the
transportation company, before they could demand acceptance of
the draft; and there was no such delivery where the vendors took
the bill of lading in their own names as consignees, indorsed it in
blank, and sent it to their agents with instructions to deliver it to
the vendee only upon payment of the draft.

APPEAL from the Superior Court of *Milwaukee* County.
The following statement of the case was prepared by
Mr. Justice TAYLOR as a part of the opinion:

The complaint in this action, after alleging that the
plaintiffs were copartners doing business in New York
state, and that the defendant was a corporation doing busi-
ness in Milwaukee, Wisconsin, sets out the following facts
as constituting their cause of action, viz.:

"That on the 16th day of December, A. D. 1887, at
Rochester aforesaid, the said plaintiffs, as such firm, *sold
and delivered to said defendant, at its request,* one hundred
and thirty-nine (139) barrels of apple cores and parings,
for which said defendant promised to pay to the said plaint-
iffs the sum of $529.76 on their draft at five days' sight for
said amount payable to the order of said plaintiffs; that
thereafter, on the 16th day of December, A. D. 1887, said
plaintiffs, under their said firm name, made their certain
bill of exchange in writing, dated on that day, directed to
the said *Roth Manufacturing Company,* and thereby re-
quired the said company, five days after sight, to pay to
the order of the said plaintiffs, by the said firm name, the said

Doyle and another vs. The Roth Mfg. Co.

sum of $529.76, for value received, and the same was duly indorsed by said plaintiffs under their said firm name of Michael Doyle & Co., and was duly presented to the said defendant for acceptance on the 10th day of January, A. D. 1888, together with an account rendered for said claim; that said defendant then and there refused to accept said draft, and has ever since refused to accept or pay the same, and the said amount is wholly unpaid. And said plaintiffs further aver that there is now due and owing to the said plaintiffs therefor, from the said defendant, the said sum of $529.76, together with interest from said 10th day of January, A. D. 1888, for which they demand judgment, and for their costs and disbursements herein."

The answer admits the partnership of the plaintiffs and the corporate character of the defendant; admits that it refused to accept the draft mentioned in the complaint; says it has not sufficient knowledge to form a belief as to whether or not the plaintiffs, under their firm name, made their bill of exchange in writing dated on the 16th day of December, 1887, directed to the defendant, and thereby requiring the defendant, five days after sight, to pay to the order of the plaintiffs, by their said firm name, the sum of $529.76, or that the same was duly indorsed by the plaintiffs under their said firm name; but alleges that the defendant was informed by telephone that a draft was in the hands of a certain bank in the city of Milwaukee, drawn on the defendant by the plaintiffs, but denies that said draft was ever presented to the defendant for acceptance, and denies that the plaintiff had any right whatever to draw said draft, or any draft, upon the defendant, and further denies each and every allegation in the complaint, except as hereinbefore admitted.

The action was tried in the superior court of Milwaukee county by the court and jury, and the plaintiffs recovered the amount claimed in their complaint. From the judg-

ment rendered in favor of the plaintiffs the defendant appeals to this court.

The material facts in the case are the following: On November 28, 1887, the plaintiffs telegraphed to the defendant, in Milwaukee, that they had a "car of apple waste at $2\frac{1}{8}$ f. o. b. cash; subject wire acceptance." It is conceded that the letters "f. o. b." signify "free on board," that is, that the plaintiffs should deliver these goods to the defendant, without expense, on board car or vessel at place of shipment. On December 2, 1887, the defendant wrote to the plaintiffs in reply to said telegram: "Your telegram to hand. We will take a car of apple waste, provided they are nice and dry, at your offer. Terms to be five days' sight after receipt of goods, as we do not like the idea of drawing on B. L. Ex. Duffy Cider Co. Will give you reference, if you prefer any." To this letter there was a postscript making inquiries about the prices of canned fruits, not material in this case. On December 5, 1887, the plaintiffs replied to defendant's letter of the 2d: "We have entered your order of the 2nd at the price and terms therein mentioned, and will ship as requested." On the 9th of December, plaintiffs sent to the defendant by mail an invoice of the car-load of apple waste, showing the number of barrels sold to defendant and the weight of each barrel. On the said 9th of December, the plaintiffs shipped the car-load of apple waste on board a car of the Rome, Watertown & Ogdensburg Railroad Company at Sodus station, N. Y. The waste was shipped in the name of the plaintiffs as consignors, to Milwaukee, Wis., and consigned to themselves in Milwaukee, and they took from the company a bill of lading in their own names as consignors and consignees. On the 16th of December the plaintiffs drew their draft upon the defendant for the sum of $529.76, payable to the order of themselves. The following is a copy of the bill or draft: "$529.76. Rochester, N. Y., December 16th, 1887.

Five days after sight, pay to the order of ourselves five hundred and twenty-nine and 76-100 dollars, value received, and charge the same to account of MICHAEL DOYLE & Co. To *Roth Manufacturing Co.*, Milwaukee, Wis."

The plaintiffs indorsed the bill of lading of the waste in which they were consignees in blank, and attached the draft to the bill of lading so indorsed. This bill of lading and draft were deposited by the plaintiffs with their bank in Rochester, N. Y., and by that bank they were sent to the First National Bank in Milwaukee for collection. The draft was also indorsed by the plaintiffs before delivering it to the bank at Rochester. Accompanying the draft and bill of lading there were the following instructions to the bank in Milwaukee: "Deliver documents attached on payment only. Hold for arrival of goods, if requested."

The evidence shows that the goods arrived at the depot of the St. Paul Railway Company in Milwaukee on the 19th of December, 1887. After the goods arrived at the depot, no notice of any kind was given to the defendant of their arrival, either by the company or by the plaintiffs or their agents; and the defendant had no actual knowledge of their arrival until long after the draft and bill of lading were returned to the plaintiffs, on the 10th of January, 1888. On the 17th of December, 1887, the plaintiffs, in replying to a letter written by the defendant on the 15th of December, among other things, say: "We have sent invoice, and have drawn as requested, at five days' sight, bill of lading attached, which you will please protect on presentation, and oblige."

The draft was never, in fact, presented to the defendant for acceptance, but the First National Bank notified the defendant by telephone, at four different times before the 10th of January, that the draft was in the possession of the bank. What the exact nature of this notice was, does not appear from the evidence. It is also claimed by the plaint-

iffs that the defendant was notified by the bank that there was a bill of lading attached to the draft, but it is not claimed that defendant had any notice of the fact that the bill of lading was in the name of the plaintiffs as both consignors and consignees, or that the same had been indorsed by them in blank. On the trial, the plaintiff *Doyle* testified that they "attached the bill of lading deliverable to our order as security for the draft," and, again, "that the consignee or drawee of the draft may know when he is accepting the same that there is reliable security back of it covering the goods." He further testified that, "without the possession of that indorsed bill of lading, the defendant could not go to the depot and get the goods." There was other evidence in the case, but nothing further than what is above stated which in any way tends to show that the plaintiffs had offered to deliver the goods to the defendant, or to deliver to it the bill of lading for said goods.

At the close of the evidence, the defendant requested the court to instruct the jury to render a verdict in its favor. The court refused the request, and the defendant excepted; and this refusal is assigned as error upon this appeal.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

For the respondents there was a brief by *Finches, Lynde & Miller,* and oral argument by *E. P. Smith.*

Taylor, J. It will be seen by the complaint that plaintiffs' action is based on the refusal of the defendant to accept their draft, at five days' sight, for the sum of $529.76, which they alleged it agreed to do, in payment for 139 barrels of apple waste sold and delivered by them to the defendant on the 16th day of December, 1887. For the purposes of this appeal we will adopt the terms of the contract between the parties in regard to these goods, as stated

by the learned trial judge. He stated the contract as follows: "These goods were sold at a definite price of 2⅓, Doyle & Co. to put them, free of expense, on board the cars at the point of shipment; the defendant to pay such price by draft drawn five days after sight, after the goods should be received at Milwaukee,— that is, at the freight-yards or freight-rooms, or the usual place where the goods are received of the transportation company at Milwaukee." Under this contract, it is very clear to us that the plaintiffs were bound to show that the goods had been delivered by them to the defendant, either at the point of shipment or at Milwaukee, in such manner that the defendant could lawfully demand them of the transportation company at Milwaukee, before the plaintiffs could demand of the defendant that it should accept the draft for the purchase price.

The evidence clearly shows that the plaintiffs purposely retained the title to the property they now claim they sold and delivered to the defendant on the 16th of December, 1887, that being the day they drew their draft on the defendant, and attached it to the bill of lading indorsed by them in blank, and sent the draft and bill of lading so indorsed to their banker in Rochester for collection. They not only had the bill of lading issued to themselves, but they instructed their agents not to deliver it to the defendant until it had paid their draft. This direction to their agents not to deliver the documents except on payment only was in direct conflict with the terms of the contract as stated by the court, and is in direct conflict with the statement of the sale made in the complaint. The evidence is clear that, under the contract, the defendant was entitled to have the title and possession of the property delivered to it on the acceptance of the draft for the $529.76, payable at five days' sight. There is no pretense for holding, under the evidence in the case, that the plaint-

iffs were to have the possession of the property as security for the payment of the accepted draft.

That, under the evidence given on the trial, the title and right of possession to the property did not pass to the defendant, is clear. The goods were the plaintiffs'. They put them on board the cars in New York, shipped in their own name, and consigned to themselves at Milwaukee. It may be admitted that they were purchased for the purpose of selling them to the defendant or filling the defendant's order; but the plaintiffs did not sell them to defendant when they shipped them to their own order. That by doing so they intended to retain the title and right of possession in themselves, is admitted by the plaintiff *Doyle* in his evidence. Had the goods been lost or injured in transit, it is clear that Doyle & Co. could have recovered for the value of the goods lost, or the damages done to them; and that the defendant could not have maintained an action for any such injury or loss unless the bill of lading had been assigned to it before action brought. This proposition is so clear that we do not deem it necessary to cite the authorities upon the point further than to quote the general rules as stated by Mr. Benjamin in his work on Sales (Corbin's notes), §§ 565–567: "*First.* Where goods are delivered by the vendor, in pursuance of an order, to a common carrier for delivery to the buyer, the delivery to the carrier passes the property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee. *Secondly.* Where goods are delivered on board of a vessel to be carried, and a bill of lading is taken, the delivery by the vendor is not a delivery to the buyer, but to the captain as bailee for delivery to the person indicated by the bill of lading as the one for whom they are to be carried. . . . *Thirdly.* The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost

decisive to show his intention to reserve the *jus disponendi* and to prevent the property from passing to the vendee." The authorities sustaining these general rules will be found in the notes to these and several preceding sections of the work.

In the case at bar, there is not only no evidence tending to show that the plaintiffs intended to part with their property in the goods when they shipped them, but on the contrary, when they shipped them on the cars, the evidence shows that they intended to retain the title and right of disposition. The plaintiffs, having failed to show any transfer of the goods to the defendant by their purchase and shipment of them to Milwaukee in their own names, must produce some other evidence of such transfer, in order to entitle them to call upon the defendant to accept their draft for the value of the goods.

It is said they sent the bill of lading to their agents in Milwaukee with directions to ask the acceptance of the draft and to deliver the bill of lading upon such acceptance. It may be admitted that if the plaintiffs, after having shipped the goods to Milwaukee in their own names as consignees, had offered to indorse the bill of lading and deliver it to the defendant, after the goods had arrived in Milwaukee, they would have been entitled to demand its acceptance of their draft for the purchase price, payable five days after sight. We are unable, however, to find any evidence in the case showing or tending to show that any such offer was ever made. On the contrary, the agents of the plaintiffs were instructed not to deliver the indorsed bill of lading until the accepted draft was paid. But, if we should disregard this positive direction to the plaintiffs' agents, and hold that the word "payment," used in the instructions, meant simply the acceptance of the draft for the price of the goods, there is still an absence of any testimony showing that any offer was made by the plaintiffs or

their agents to deliver the indorsed bill of lading to the defendant. All that is shown is that it was requested to accept the draft. When this request was made, the title and right of possession of the property was in the plaintiffs, and no offer to pass the title to the property to the defendant was made. The bill of lading is still in the possession of the plaintiffs, and was produced by them as evidence on the trial. As the plaintiffs base their right to recover upon a sale and delivery of the goods, they were bound to produce on the trial evidence which would prove, or at least tend to prove, such sale and delivery. That, certainly, was not done in this case. The fact of the sale and delivery was put in issue by the answer of the defendant, and the burden of proof was on the plaintiffs.

So far as the evidence in this case shows, as between the plaintiffs and the defendant the possession and title of the goods in question remained in the plaintiffs; and no proof was made of any offer to transfer the title or possession to the defendant before the action was commenced. The plaintiffs failed to prove their cause of action, and the motion of the defendant should have been granted.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded for a new trial.