CASE 73—ATTACHMENT—OCTOBER 25.

# Kentucky Refining Company v. Globe Refining Company.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. ATTACHMENT—SALES OF PERSONALTY—BILL OF LADING, WITH DRAFT.—Where a consignor of personal property drew on the consignee for the agreed purchase price with a bill of lading attached, upon which was indorsed, "On payment of attached draft, deliver to Globe Refining Co.," and signed by the consignor, the title to the property did not pass until the draft was paid and a plaintiff in an action for damages against the consignor who attached the property before payment of the draft acquired a valid lien, which was not defeated by subsequent payment of the draft.

'ARTHUR M. RUTLEDGE FOR APPELLANT.

1. When, by the bill of lading, goods consigned are deliverable to the shipper's own order, there is a strong, and almost conclusive presumption that the shipper intended to reserve to himself the *jus disponendi*, and not to part with his title. Benjamin on Sales (4th Am. Ed.), vol. 1, secs. 541, 542, 567; Am. ·& Eng. Enc. of Law, vol. 21, p. 508; Am. & Eng. Enc. of Law., vol. 2, p. 243; Hutchinson on Carriers (2d ed.), secs. 131 and 131a; Louisville & Nashville R. R. Co. v. Hartwell, 99 Ky., 436; 18 Ky. Law Rep., 745; Dows v. National Exchange Bank, 1 Otto, 618 (91 U. S.); Treadwell v. Anglo American Packing Co., 13 Fed. Rep., 22; Embry's Sons v. Irving National Bank, 25 O. St., 360; Security Bank, &c., v. Luttgen, 29 Minn., 363; Barker v. Chicago M. & St. P. Ry. Co., 87 N. W. R., 376; Union Stock Yards Co. v. Wescott, 66 N. W. R., 419; Berger v. State, 50 Ark., 20; McCormick v. Joseph, &c., 79 Ala., 236; Jenkyns v. Brown, 86 Eng. Com. L. R. (14 Q. B.), 495; Ellershaw v. Maginac, 6 Exchq., 569; Doyle v. Roth Mfg. Co., 76 Wis., 48; Bergen v. Indianapolis R. R. Co., 104 Mo., 77; Merchants' National Bank v. Bangs, 102 Mass., 291; Reynolds v. Scott, 4 Pac. Rep. (Cal.), 346; Alderman

Kentucky Refining Company v. Globe Refining Company.

v. Eastern R. R. Co., 115 Mass., 233; Mason v. Great Western
R. R., 31 Up. Can. Q. B., 73; The St. Joze Indiano, 1 Wheaton,
208; Ogg, et al., v. Shuter, L. R. C. P., 47; Wait v. Baker, 2
Exchq., 1; Van Casteel v. Booker, 2 Exchq., 691; Gabarron v.
Kreeft, L. R. 10 Exchq., 274.

2. If the draft for the purchase price is payable "at sight" or "on
demand," there must be both acceptance and payment before
the purchaser can claim the bill of lading attached thereto.
Eng. & Am. Enc. of Law, vol. 21, p. 509; Dows v. National Ex-
change Bank, 91 U. S., 618; Emery v. Irving National Bank,
25 O. St., 360; Alderman v. Eastern R. R. Co., 115 Mass., 233;
Jenkyns v. Brown, 14 G. B., 496; Farmers' &c. National Bank v.
Logan, 74 N. Y., 569; 13 Fed. R., 22; 29 Miss., 363; 18 Am. Rep.,
299; 33 Am. Rep., 745.

3. An invoice is only a statement of the nature, quality and price
of the goods shipped, but is not a bill of same and furnishes
no proof of title. Dows, &c., v. National Exchange Bank, 91
U. S., 618; Hutchinson on Carriers, sec. 131a; Benjamin on Sales,
sec. 542.

RICHARDS, BASKIN & RONALD for appellee.

1. The appellant can not claim that a sale of the oil by the Marlin
Company to the appellee was with intent to hinder, delay and
defraud the former's creditors under section 1906 Kentucky
Statutes (1), because the Kentucky Refining Company, appel-
lant, was not a creditor of the Marlin Oil Company, and (2)
because the proof fails to sustain the contention that such was
the intention of the parties. Underwood v. Ogden, 6 B. M., 606.
The invoice, bill of lading and accepted draft were sufficient to
transfer title to the appellee. A party holding an unrecorded
mortgage or a bond for title, holds an equity and a purchaser
under an execution or attachment sale if he had notice of the
unrecorded mortgage or bond for title takes subject thereto.
Walker v. McKnight, 15 B. M., 467; Low v. Blincoe, 10 Bush,
331; Righter v. Forester, 1 Bush, 278.

2. If this transaction between the Marlin company and the appellee
did not constitute a sale and delivery, certainly the telegrams
and invoice constituted a good bill of same or bond for title,
and being prior in date to the suing out of the attachment,
constituted an older equity. Low v. Blincoe, heretofore cited;
Zaring v. Cox's Admr., 78 Ky., 528.

Kentucky Refining Company v. Globe Refining Company.

3. Appellee, however, acquired a legal title to the oil.

The authorities relied on by appellant: Jennings v. Flanni-
gan, 5 Dana, 217; Ferguson v. Northern Bank of Ky., 14 Bush,
555; May v. Hoaglan, 9 Bush, 171; Brown v. Childs, 2 Duv., 314;
Hoffman v. Brungs, 83 Ky., 400, were cases involving the ques-
tion of identification of the property attempted to be sold.

4. A purchaser is one who holds the legal title to realty or personalty.
It is immaterial whether he has paid or merely agreed to pay.
The title passes just the same. McGowen v. Hoy, 5 Litt., 239;
Halbert v. McCulloch, 3 Met., 456; Willis v. Willis, 6 Dana, 48;
Sweeney v. Owsley, 14 B. M., 413; Brown, &c., v. Childs, 2 Duv.,
322; Duncan v. Lewis, 1 Duv., 183; Barker v. Mann, 5 Bush, 672;
Newcomb v. Cabell, 10 Bush, 460; Buffington v. Ulen, 7 Bush,
231; Thompson v. Brannin, 94 Ky., 495.

SAME COUNSEL FOR APPELLEES IN A PETITION FOR A MODIFICATION
OF THE OPINION.

1. The direction in the opinion to sustain the attachment of the
appellant and to adjudge the property in question subject to the
attachment of the appellant, is premature.

2. At the time of the issuing of the attachment by the appellant
the oil had been assigned to the First National Bank of Marlin,
Texas, and therefore, not being the property of the Marlin Oil
Company, is not subject to levy upon a demand against it.

3. The supposed contract upon which the court's opinion is based
is not the real contract involved. The rule of requiring posses-
sion to accompany the sale has been several times relaxed in
cases that made delivery impracticable; Robbins v. Oldham, 1
Duv., 28; Cummins v. Griggs, 2 Duv., 87; Hagins v. Combs, 19
Ky. Law Rep., 1165.

SAME COUNSEL FOR APPELLANT IN RESPONSE TO A PETITION FOR A
MODIFICATION OF THE OPINION.

Additional citations: Sutherland v. Second National Bank, 78
Ky., 250; Benjamin on Sales (4th Am. ed.), secs. 381, 382.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

The appellant was a corporation doing business in the
city of Louisville, and engaged in refining cotton-seed oil.
The appellee was a corporation doing a like business in

[ 36 ]

said city. The Marlin Oil Company was a corporation, doing business in Texas, and engaged in the manufacture of crude cotton-seed oil. The appellant instituted suit against the Marlin Oil Company in the Jefferson Circuit Court, and in the petition it is alleged: That on the 1st of November, 1895, the defendant, the Marlin Oil Company, sold and agreed to deliver to the appellant 800 barrels of prime crude cotton-seed oil, to be shipped by the defendant from Marlin, Tex., to the plaintiff, in plaintiff's tanks, and upon plaintiff's order, at the price of 19 cents per gallon of 7½ pounds f. o. b. at the mill of defendant in Marlin, Tex., and plaintiff to pay for same by sight draft after arrival of bill of lading and inspection of said oil—the quality and weight of the oil guaranteed by the defendant. That after said 1st of November, 1895, the appellant had ordered the defendant to ship all of said oil from its mills in the town of Marlin to the plaintiff in the city of Louisville, and furnished to defendant its tanks therefor; but that the defendant broke its said contract, and refused to deliver said oil to the plaintiff, and refused to ship the same from its said mills, and has never furnished or shipped same. That plaintiff has been ready and willing to perfect its part of said contract, and to pay said purchase price for said oil, as agreed upon in said contract. That the quantity of said oil that defendant agreed to sell to plaintiff is 40,000 gallons. That plaintiff, relying on said contract and agreement of said defendant to deliver to it the said oil, made contracts to sell and deliver said quantity of oil, with other oil it had, to its customers; but was unable to fulfill its contract except by purchasing other oil in lieu of said oil. That, after said purchase by plaintiff, the market price of said oil advanced 2 cents on each gallon, and is now worth 2 cents more, to-wit, 20 cents per

Kentucky Refining Company v. Globe Refining Company.

gallon; and plaintiff was compelled to buy said quantity of oil from other parties, and pay therefor 2 cents per gallon more than said contract price, and was thereby compelled to pay for said oil purchased by it from other parties to fill said contracts, paying $800 over and above the price at which defendant agreed to furnish said oil, and plaintiff was thereby damaged in the sum of $800. Plaintiff further alleged that the defendant was indebted to it in the sum of $257.29 on another account, the particulars of which were set out in the petition; for which sums plaintiff prayed judgment, and obtained an attachment against the property of the defendant, which attachment was issued November 30, 1895, and came to the hands of the sheriff of Jefferson county at 10:55 a. m., November 30th, and was executed at 11:45 a. m., by delivering a copy of the attachment to Theo. Goeper, an employe of the Louisville & Nashville Railroad Company, and who had said car of oil in his charge, and levied on one car of cotton-seed oil, and left same in charge of said Goeper. It further appears that after the levy aforesaid the plaintiff obtained an order of sale, and the oil was sold. On January 11, 1896, the appellee, the Globe Refining Company, filed its petition, and sought to be made, and was made, a party to this action, and claimed to be the owner of the oil attached. It is alleged by the appellee that on the 25th of November, 1895, it received a telegram from the defendant, the Marlin Oil Company, in words and figures as follows: "Tank K, R. Co. two hundred twenty-six, seven hundred fifty-six, prime oil in Louisville. Draft returned by Kentucky Refining Co. Will you take it at 19 cents? Answer." To which telegram the appellee replied as follows: "Telegram received. Will take Kentucky tank two twenty at 19 cents. Rush documents." On the 26th of November,

1895, appellee received the second telegram from the said Marlin Oil Company, as follows: "We confirm sale of tank two twenty. Forward papers to-day. Routing is care Katy to St. Louis. Final destination, New York City. Trying to locate tank. If in Louisville, answer, our expense." It is further alleged that by reason of said purchase appellee purchased said oil at the price aforesaid, making $1,155.28. On the 26th of November, 1895, the said Marlin Oil Company drew its draft, payable at sight, on petitioner, for said sum, to pay for said oil, and that appellee duly accepted said draft on the 30th of November, 1895, and thereafter paid same when due. Said two telegrams, also a copy of the reply of the petitioner, and the said sight draft, are filed herewith as part hereof, marked Exhibits 1, 2, 3 and 4, respectively., Attached to said draft of November 26, 1895, was a bill of lading for said car load of oil, said oil having been shipped to the order of Marlin Oil Company. Said bill of lading was indorsed as follows: "On payment of attached draft, deliver to Globe Refining Co. Marlin Oil Co., by W. D. Keyser, Mgr." By said bill of lading said oil was routed and shipped by way of St. Louis to New York, and said oil passed through the hands of the Wiggins Ferry Company of St. Louis, and was transported by them to the city of Louisville to the Kentucky Refining Company, instead of to the city of New York, and the same was, by the railroad company bringing said oil from St. Louis, delivered to the Kentucky Refining Company, without any order or direction from the Marlin Oil Company, and without surrender of the bill of lading, and the attachment sued out herein purports to have been levied upon said oil. That after the appellee had paid the draft for the amount of said oil, it mailed said bill of lading to the Wiggins Ferry Company, with directions to

change routing of said car load of oil from New York to Louisville, and to deliver same to petitioner, said Wiggins Ferry Company having erroneously marked said bill of lading, "Cancelled." Said bill of lading is attached hereto, and marked "Exhibit No. 5." It is further alleged in the petition that appellee purchased the oil before the filing of this action, and before the suing out of the attachment, and paid said draft without knowledge of said attachment. Appellee prayed judgment for the value of the oil at the time of the suing out of the attachment, which it alleged was $1,418.76.

Exhibit 1 reads as follows: "11-25-95. Marlin, Texas. Globe R. F. Co.: Tank K. R. Co., two hundred twenty-six seven hundred fifty-six gallons prime oil in Louisville. Draft returned by Kentucky Refining Co. Will you take it at 19 cents? Answer. Marlin Oil Co."

Exhibit No. 2: "11-26-189—. Marlin, Texas. To Globe Refining Co., Lou.: We confirm sale of tank two twenty. Forward papers to-day. Routing is care Katy to St. Louis; destination New York City. Trying to locate tank. If in Louisville, answer, our expense. [Signed] Marlin Oil Co."

Exhibit No. 3: "Nov. 25, 1895. Marlin Oil Co., Marlin, Texas: Telegram received. Will take Kentucky tank two twenty at 19 cents. Rush documents. [Signed] Globe Refining Co."

Exhibit No. 4: "First National Bank of Marlin, Texas. Nov. 26, 1895. At sight pay to the order of First National Bank of Marlin, Texas, $1,155.28 (eleven hundred and fifty-five and 28-100 dollars), for value received, and charge to account of Marlin Oil Co., by J. W. R. Cinson, Secy.

"To Globe Refining Co., Louisville, Ky.

"Accepted by telephone, November 30, 1895, Globe Refining Co., by L. W. Motley, Third Nat. Bank."

By an amended petition appellee alleged that the oil was of the value of $1,601.38, and that it brought that sum at sheriff's sale January 27, 1896, and sought judgment against appellant for that sum.

The reply may be treated as a traverse of all the averments of the appellee showing it to be the owner and entitled to the oil at the time of the levy of the attachment. It is further alleged in the reply that, at the time of the pretended communication between defendant and appellee concerning the oil, the oil was in a tank belonging to appellant, and on the switch of the Louisville & Nashville Railroad Company in the yard of appellant, and that the same had been shipped and left there with the knowledge, consent, and direction of the Marlin Oil Company, the Marlin Oil Company then being indebted to the plaintiff to the amount and extent named in the petition; that the said Marlin Oil Company, when it shipped and caused said oil to be sent to plaintiff's said yard, as aforesaid, sent its draft on the plaintiff for the sum of $——, for which it demanded payment before allowing the railroad company to deliver said oil to the appellant, and without paying or offering to pay or adjust its said indebtedness to the plaintiff, and plaintiff refused to accept or pay the amount of said draft until said Marlin Oil Company's indebtedness to it was satisfied, and plaintiff was then threatening and about to bring an action and sue out an attachment against said Marlin Oil Company to be levied upon said oil to satisfy its claim; that said Marlin Oil Company was at that time, and now is, a foreign corporation. The said Marlin Oil Company then, and for the purpose of defrauding this plaintiff, its creditor, and delaying plaintiff in the collection of its debts against said Marlin Oil Company, commenced communication with the Globe Refining Company

to sell to it said oil, and that said pretended sale of oil to the appellee was made for the purpose and with the intention of defrauding plaintiff, and to hinder and delay it in the collection of its claim; all of which said appellee then well knew. In the third paragraph of the reply it is substantially alleged that before the pretended acceptance of said alleged draft by the appellee, and before any sale or delivery to it of the oil attached herein, said attachment had been placed in the hands of the sheriff of Jefferson county, and was then in the hands of the sheriff of Jefferson county, for execution, and plaintiff had acquired and then had a lien on said oil for its said debt. The appellee, in its rejoinder, in substance traversed all the affirmative averments contained in the reply. By an amended petition appellant claimed that it had to pay $192.55 freight on said oil, for which it in any event asked credit. After the issues were finally made up, and proof taken, the court rendered judgment in favor of appellee for $1,601.38, with interest from the day of sale, to-wit, 27th of January, 1896, subject to a credit of $195.22, freight paid, and further adjudged that appellee recover of the appellant its costs; and from that judgment appellant prosecutes this appeal.

The contention of appellant is that the title to the oil in contest was in the Marlin Oil Company at the time of the issual and levy of the attachment, and, therefore, subject to seizure and sale in satisfaction of its claim against the Marlin Oil Company. It is also claimed by appellant that the alleged sale or transaction between appellee and the Marlin Oil Company was made to hinder or defeat the collection of appellant's claim. If either contention be true, the judgment appealed from should be reversed. It is unquestionably true that the appellee had some notice

of some dispute or disagreement between appellant and the Marlin Oil Company, and the proof conduces to show that the appellee had recognized a possibility, if not a probability, of the oil being attached by appellant, else it would not have imparted the information to the Texas company that the oil was not attached. But we are not inclined to hold that the proof establishes any fraudulent attempt upon the part of appellee; hence the only question demanding serious or extended consideration is the question of title at the time of the levy of the attachment. Section 1908, Ky. Stat., provides that: "Every voluntary alienation of or charge upon personal property, unless the actual possession, in good faith, accompanies the same, shall be void as to a purchaser without notice, or any creditor, prior to the lodging for record of such transfer or charge in the office of the County Court for the county where the alienor or person creating the charge resides." It is not, however, seriously contended that the statute *supra* affects the case at bar, because it is a well-recognized rule of law that there may be such a delivery of the kind of property now in question as will pass title to the purchaser without actual physical possession of the property being placed in the hands of the vendee. It will be observed that the oil in question was shipped first to the appellant, with draft attached to bill of lading. It, however, appears that upon failure of appellant to pay the draft the bill of lading was not delivered to it, and that afterwards the Texas company had the transaction with the appellee as shown by this record. If the contract entered into between the appellee and the Texas company passed the title of the property to appellee, then the same was not subject to the attachment. If, however, the title remained in the consignor at the time of the seizure of

the property under the attachment, then the same was liable to seizure and attachment, and the judgment of the court below should be reversed. Counsel for both sides have filed able briefs, and cited numerous authorities. It seems to us that the weight of authority sustains the contention of appellant. It is said in Hutchinson On Carriers, sec. 130: "The consignee named in the bill of lading is presumptively the owner of the goods, and must be treated by the carrier as the absolute owner until he has had notice to the contrary; and a delivery to him without such notice will discharge the carrier. But if the party who claims the goods is not the consignee, he should be required to produce the bill of lading with the indorsement of the consignee, where the goods are deliverable to him or to his assigns, or of the shipper himself when the goods are shipped on his own account, and deliverable to his order. And where the goods are shipped deliverable to the order of the consignor, for and on account of the consignee, the carrier can not deliver them to such consignee, except upon the production of the bill of lading, properly indorsed by the consignor, for this is notice to the carrier that the shipper intends to retain in his power the ultimate disposition of the goods." It is said in section 131, same author: "The practice of taking bills of lading providing for delivery to the shipper's own order has become very common, in order to use the bill of lading either as collateral or to obtain payment of the goods before delivery." It appears from section 131a that the consignor had shipped goods consigned to itself, and inclosed to the supposed purchaser an invoice of the goods which stated on its face that the goods were shipped from Bay City, Mich., via F. & P. M. R. R., to B. & L., with draft. They also drew on the purchaser for the price of the goods,

attached the bill of lading to the draft, and sent the draft on for collection. The purchaser exhibited the invoice to the agent of the carrier, and received the goods. He failed to pay the draft, and the carrier was held liable. "The title to the property," said Paxson, J., "remained in the consignor until delivery in accordance with the conditions. Bills of lading are symbols of property, and, when properly indorsed, operate as a delivery of the property itself, investing the indorsees with a constructive custody, which serves the purpose of an actual possession, and so contines until there is a valid and complete delivery of the property under and in pursuance of the bill of lading, and to the person entitled to receive the same. There can be no delivery except in accordance with the bill of lading. The invoice alone furnishes no proof of title." In Benjamin on Sales (4th Am. Ed.) sec. 320, it is said: "To these may be added, thirdly, where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer. * * *" It seems to be well settled that, if the vendor intends to retain the *jus disponendi* of the goods, the title never passes to the purchaser until all the requirements of the seller have been complied with. Sections 381 and 382 of Benjamin on Sales (4th Am. Ed.) lay down the law as follows: "It has already been shown that the rules for determining whether the property in goods has passed from vendor to purchaser are general rules of construction adopted for the purpose of ascertaining the real intention of the parties, when they have failed to express it. Such rules, from their very na-

ture, cannot be applied to cases where exceptional circum-
stances repel the presumptions or inferences on which the
rules are founded.   However definite and complete, there-
fore, may be the determination of election on the part of
the vendor, when the contract has left him the choice of
appropriation, the property will not pass if his acts show
clearly his purpose to retain the ownership, notwithstand-
ing such appropriation."   "(382) The cases which illus-
trate this proposition arise chiefly where the parties live
at a distance from each other, where they contract by cor-
respondence, and where the vendor is desirous of secur-
ing himself against the insolvency or default of the buyer.
If A., in New York, orders goods from B., in Liverpool,
without sending the money for them, there are two modes
usually resorted to, among merchants, by which B. may
execute the order without assuming the risk of A.'s ina-
bility or refusal to pay for the goods on arrival.   B. may
take the bill of lading, making the goods deliverable to
his own order, or that of his agent in New York, and send
it to his agent, with instructions not to transfer it to A.
except on payment for the goods.   Or B. may choose to
advance the money in Liverpool, and may draw a bill of
exchange for the price of the goods on A., and sell the bill
to a Liverpool banker, transferring to the banker the bill
of lading for the goods, to be delivered to A. on due pay-
ment of the bill of exchange.   Now, in both these modes
of doing the business it is impossible to infer that B. had
the least idea of passing the property to A. at the time
of appropriating the goods to the contract.   So that, al-
though he may write to A., and specify the packages and
marks by which the goods may be identified, and although
he may accompany this with an invoice, stating plainly
that these specific goods are shipped for A.'s account, and

in accordance with A.'s order, making his election final and determinate, the property in the goods will nevertheless remain in B., or in the banker, as the case may be, till the bill of lading has been indorsed, and delivered up to A.   These are the most simple forms in which the question is generally presented; but we shall see that in this class of cases, as well as in that just discussed, it is often a matter of great nicety to determine whether or not the vendor's purpose or intention was really to reserve a *jus disponendi*."

In the case of Dows v. National Exchange Bank of Milwaukee, 91 U. S. 618, the Supreme Court of the United States had under consideration practically the same question involved in the case at bar, and we quote as follows from the syllabus of the opinion of the court in that case: "An invoice is neither a bill of sale nor evidence of a sale, and, standing alone, furnishes no proof of title.   A party discounting a draft, and receiving therewith, deliverable to his order, the bill of lading of the goods against which the draft was drawn, acquires a special property in them, and has a complete right to hold them as security for the acceptance and payment of the draft.   *   *   *   Where neither the evidence received nor offered tended to rebut the intent exhibited in the bill of lading, and confirmed throughout by the indorsement thereon, and the written instructions to retain the ownership of the wheat until payment of the draft.   Held, that there was no necessity of submitting to the jury the question whether there had been a change of ownership."   The supreme court of Ohio, in Emery's Sons v. Irvine National Bank, 25 Ohio St. 360 said: "By the rules of commercial law a bill of lading is regarded as the symbol of the property therein described,

and, in case the shipper reserves to himself the *jus disponendi,* he can transfer the title, at any time before the property is delivered by the carrier, to the consignee, as effectually by the delivery of the bill of lading as by delivery of the property itself.  \*  \*  \*  On such question of intention, the terms of the bill of lading are to be taken as admissions of the consignor, and are entitled to great weight, but are not conclusive." In Union Stock-Yards Co. v. Westcott (Neb.) 66 N. W. 419, it is, in substance, said that directions contained in the bill of lading to notify a certain person of the arrival of the shipment at the place of destination is not authority to the carrier to make delivery of such shipment to the persons to be so notified, without the production of the bill of lading. The supreme court of Arkansas, in Berger v. State, 50 Ark. 20, [6 S. W. 15], in substance, said: "The vendor who takes a bill of lading deliverable to his order, or that of his agent, manifests the intention to reserve the *jus disponendi* of the goods shipped in himself, and the title does not vest in the person for whom they are ultimately intended until actual delivery to him." In Doyle v. Roth Manufacturing Co., 76 Wis., 48 [44 N. W. 1100], the supreme court of Wisconsin in effect sustained the doctrine announced by the supreme court of Arkansas in the case supra. In Bergeman v. Indianapolis & St. Louis Railroad Co., 104 Mo., 77 [15 S. W., 992], the supreme court of Missouri, in substance, held that, in a sale of mules, the vendor receiving a small sum of money at the time, and drawing a draft for the balance of the purchase price on certain commission merchants to whom he consigned the mules, to be by them delivered to the vendee on payment of the draft, and not before, the possession remained in the vendor and his agents until the purchase price was

paid. In Merchants' National Bank v. Bangs, 102 Mass. 295, the court, in discussing the question involved in the case at bar, used the following language: "In all completed contracts of sale, property in the goods sold passes to the buyer, although they may not have come into his actual possession. An unconditional sale of specific chattels passes the title at once, and the buyer takes the risk of loss, and has the right to immediate possession. When anything remains to be done in the way of specifically appropriating the goods sold to the contract, the agreement is executory, and the property does not pass. When, from the nature of the agreement, the vendor is to make the appropriation, then, as soon as any act is done by him, identifying the property, and it is set apart with the intention unconditionally to apply it in fulfillment of the contract, the title vests, and the sale is complete. Thus the delivery to the buyer or his agent, or to a common carrier, consigned to him, whether a bill of lading is taken or not, if there is nothing in the circumstances to control the effect of the transaction, will be sufficient. If the bill of lading, or other written evidence of the delivery to the carrier, be taken in the name of the consignee, or be transferred to him by endorsement, the strongest proof is afforded of the intention to transfer an absolute title to the vendee. But the vendor may retain his hold upon the goods to secure payment of the price, although he puts them in the course of transportation to the place of destination, by delivery to a carrier. The appropriation which he then makes is said to be provisional or conditional. He may take the bill of lading or carrier's receipt in his own or some agent's name to be transferred on payment of the price, by his own or his agent's indorsement to the pur-

chaser; and in all cases when he manifests an intention to retain this *jus disponendi* the property will not pass to the vendee. Practically, the difficulty is to ascertain, when the evidence is meager or equivocal, what the real intention of the parties was at the time. It is properly a question of fact for the jury, under proper instructions, and must be submitted to them, unless it is plain, as matter of law, that the evidence will justify a finding but one way. Allen v. Williams, 12 Pick. 297; Stanton v. Eager, 16 Pick. 473; Stevens v. Boston & Worcester Railroad Co., 8 Gray, 262; Coggill v. Hartford & N. H. Railroad Co., 3 Gray, 545; Moakes v. Nicholson, 19 C. B. (N. S.) 290; Godts v. Rose, 17 C. B. 229; Tregelles v. Sewell, 7 Hurl. & N. 574; Benjamin On Sales, 245." The same court, in Alderman v. Eastern Railroad Co., 115 Mass. 233, substantially decided that when goods are consigned deliverable to the order of the consignor, and the bill of lading, with a draft for the price, drawn on the purchaser of the goods, attached, is forwarded for collection, the purchaser has no title to the goods until the draft is paid, and the bill of lading is indorsed to him; and the previous sale of the goods to arrive is void as against the person advancing the money to pay the draft, to whom the bill of lading was indorsed by the drawee as soon as he obtained possession; and the second carrier, who received the goods from the first carrier to transport to their destination, with knowledge on whose account they are carried, though without knowledge of the bill of lading, is liable to the holder of the bill of lading if he delivers the goods to such a purchaser. The Court of Appeals of New York in Farmers' and Mechanics' National Bank v. Logan 74 N. Y., 568, substantially announced the same doctrine contained in the last-named case. It is said in 21

Am. & Eng. Enc. of Law, p. 507: "The foregoing rules for determining whether the property in goods sold has passed from seller to buyer are rules of construction adopted for the purpose of ascertaining the intention of the parties. It follows necessarily that such general rules are not applicable where exceptional circumstances repel the presumptions or inferences upon which the rules rest. If, notwithstanding the appropriation of the goods, the seller's acts show clearly his purpose to retain the ownership, the property does not pass. It is to be borne in mind, however, that this doctrine applies as between the parties to the sale, and not to the prejudice of the rights of third parties, such as creditors or *bona fide* purchasers, who, under the circumstances, may be entitled to insist that as to them the reservation should be treated as inoperative. Where the seller delivers goods to the common carrier for delivery to the buyer, this is equivalent to a delivery to the buyer whose agent the carrier is deemed to be. If a bill of lading is taken, the carrier is bailee for the person indicated by the bill of lading. If, as is frequently the case, the seller has the bill of lading so drawn that the goods are deliverable to his order, this, in the absence of evidence to the contrary, is almost decisive in showing his intention to reserve the *jus disponendi*, and prevent the passing of the title to the buyer. This *prima facie* conclusion that the seller reserves the *jus disponendi* when the bill of lading is to his order may be rebutted by proof that in so doing he acted as agent for the purchaser, and did not intend to retain control of the property; and it is for the jury to determine as a question of fact what the real intention was. So, when the seller ships goods to a third person, who is his agent, for delivery to the purchaser, he equally manifests the intention to reserve the

*jus disponendi*, and to prevent the property from passing to the purchaser until such delivery has been made. . . . If the bill of exchange is payable at sight or on demand, there must be both an acceptance and payment before the purchaser can claim the bill of lading." The principle *supra* seems to be sustained, to some extent at least, by the opinion of this court in L. & N. Railroad Co. v. Hartwell, 18 Ky. Law Rep., 745 [36 S. W., 183].

We have carefully examined the authorities relied on by the appellee, but are unable to see that they sustain its contention, or are at all in conflict or inconsistent with the doctrine announced in the various decisions hereinbefore referred to. It seems to us that it would be unjust and inexpedient to announce as a principle of law that a consignor consigning property to his own order, with directions to notify the purchaser thereof, and sending a draft, with bill of lading attached, requiring payment of the draft before the bill of lading should be delivered, should be held to have parted with his title to the property. In the case at bar, if it be true that the appellee acquired title to the property before it had paid the draft in question, it would then follow that the property would be liable to its debts, and subject to seizure and sale in satisfaction thereof. It is manifest from the evidence in this case that the Marlin Oil Company never intended to part with its title or its *jus disponendi* to the property in question until the purchase price thereof had in fact been paid. The acceptance of the draft in question was not payment thereof, and, besides, it is questionable whether or not the attachment had not been placed in the hands of the officer, and probably levied, before the acceptance of the draft, which acceptance was only by telephone. The ap-

[37]

pellee did not pay the draft until December 3d, at which time it received the bill of lading, the symbolic delivery of the property. It can hardly be questioned but that the title to the oil remained in the Marlin Oil Company until the acceptance of the draft, and it may well be questioned whether it was not incumbent on the appellee to show that the acceptance of the draft preceded the issual and levy of the attachment, even if it was to be conceded (which it is not) that the acceptance of the draft perfected appellee's title to the property. It seems manifest that the business interests of the country demand that the consignor in a distant part of the country should have the right to ship property to be delivered to the purchaser only upon the condition that the purchaser first actually pays for the same. It is worthy of note in the case at bar, upon the failure of appellant to pay the draft attached to the bill of lading for this identical car of oil, that the consignor asserted and exercised the right to make such disposition of the property as it saw fit, although the property was in a tank confessedly the property of appellant, and also in its private yard, though still in custody of the common carrier. Taking into consideration all the facts and circumstances proven in this cause, it is clear that the Marlin Oil Company never intended to part with the *jus disponendi* to the oil until it had first received the price demanded therefor. For the reasons indicated, the judgment of the court below is reversed, and cause remanded, with directions to sustain the attachment of the appellant, and to adjudge the property in question subject to the attachment of the appellant and for proceedings consistent herewith.