# CHARLESTON

## YOUNG v. EDWARDS.

Submitted March 4, 1908.　　Decided March 10, 1908.

1. DETINUE—*Action on Bond—Pleading.*

Though a declaration on a detinue bond must allege that the plaintiff in the action of detinue had possession of the property after the bond was executed, no particular form of allegation of the fact is essential, and it suffices to show that the property was seized by the officer and retained by him for more than three days after the seizure. (pp. 70, 71.)

2. SAME—*Liabilities on Bond.*

If, after the lapse of the period of three days allowed the defendant in such action in which to regain possession of the property by giving the counter, or re-delivery, bond, prescribed by the statute the property remains in the hands of the officer, he holds it by the sufferance or permission, and as bailee or agent, of the plaintiff; and, in order to recover on the bond, it is not necessary to allege or prove that the latter had it in his personal possession or that the officer held it for him under a special or express contract of agency. (p. 72.)

3. PRINCIPAL AND AGENT—*Relationship*.

When a party to an action has the power to command an officer of the court and compel obedience to his orders, the latter is, for many purposes, the agent of the former. (pp. 72, 73.)

4. DETINUE—*Replevin*.

As by statutory provisions, the action of detinue in this state has been so broadened and enlarged as to include many of the principles of the law of replevin, it is proper to observe the analogy between detinue, as so modified, and replevin, in construing the statutes by which this change has been wrought. (p. 71.)

5. SALE— *When Title Passes*.

Under a contract by which the owners of the timber on a certain tract of land, some miles from a railroad, agree to manufacture the same into lumber and deliver the lumber on cars at the railroad at certain prices and receive a small part of the purchase money at the time of the signing of the agreement, the title to the lumber does not pass from the seller to the purchaser until the same has been loaded on the cars. (p. 74.)

6. DETINUE—*Action on Bond—Title*.

In an action on a detinue bond, the element of title to the property is to be determined as of the date of the seizure, or wrongful witholding of the possession thereof, under the writ. (pp. 74, 75.)

Error to Circuit Court, Clay County.

Action by J. H. Young and H. W. Ashley against Samuel Edwards and others. Judgment for defendants, and plaintiffs bring error.

*Reversed. Remanded.*

H. B. DAVENPORT, for plaintiffs in error.

GEO. E. PRICE, for defendant in error.

POFFENBARGER, PRESIDENT:

In an action of debt on a detinue bond, instituted by James H. Young and H. W. Ashley, against Samuel Edwards and A. W. Watrous and the United States Fidelity and Guaranty Company, the circuit court of Clay county, deeming the evidence insufficient to prove that the property seized by the sheriff, under the writ in the action of detinue, went into the hands of the plaintiffs in that action, or that the sheriff held it for them as their agent, under an express agreement that he should so hold it, directed a verdict for the defend-

ants, pursuant to which judgment was rendered for them, and of this judgment the plaintiffs complain on their writ of error thereto.

The declaration, as originally drawn, after averring the steps taken in the action of detinue, including the execution of the bond and the seizure of the property, about 75,000 feet of sawed lumber, of the value of $1,000.00, alleged "that the said sheriff retained possession of said sawed lumber and cross ties and kept the same until the 13th day of October, 1905." A demurrer to it having been sustained, the portion just quoted was amended so as to read as follows: "That the said sheriff at the instance, request and by the consent of the said Edwards and Watrous and as the representative of said Edwards and Watrous, retained and withheld the possession of said sawed lumber and cross ties and kept the same until the 13th day of October, 1905." From the subsequent allegations of the declaration, as well as from the evidence, it appears that the action in which the bond was given and the property was seized, was dismissed on the said 13th day of October, 1905, and judgment for the defendants therein, the plaintiffs in this action, was rendered for the costs amounting to $97.30. The property was never removed from the premises on which it was at the time of the seizure, but the plaintiffs here were excluded from the possession, custody and control of it during the pendency of the action of detinue. There was no actual delivery thereof to the plaintiffs in that action, though they had given a bond and the property was seized on the 24th day of May, 1905, and the action was not dismissed until in October, 1905. No counter bond was given by the defendants and it is not pretended that they had either actual or constructive possession of the property at any time between the seizure and the release thereof. They charge constructive possession on the part of the obligors on two grounds: first, that the possession of the sheriff was the possession of the plaintiffs in the detinue action; and, second, that, at the instance and request of the plaintiffs, the sheriff placed one William Callison in charge of the property. As to whether Callison was the agent of the sheriff or of the plaintiffs, there is controversy. According to the testimony of the sheriff, no demand was made upon him for the possession of the property and

he neither delivered it to the plaintiffs nor refused to do so.
In the order by which the action was dismissed, there is a
recital to the effect that the property sued for had been taken
by the plaintiffs. It appears that, while the property was so
held under process, it was seriously damaged by high water
and some of it washed away. Expenses of the litigation, loss
of time and increased cost of marketing the lumber, owing
to destruction of the road over which it had to be hauled,
caused by high water while the possession of the lumber was
withheld, are set up as additional elements of damage.

By reason of the modification of the common law principles
governing the action of detinue, effected by our statute,
extending to the plaintiff the right to have the officer to take
the property into his possession, by giving a bond at the
commencement of the action, or at any time before judgment
the principles governing the common law remedy, known as
the action of replevin, were engrafted upon the remedy of
detinue. As far back as 1819, the action of replevin was
narrowed down to a few cases. In 1849, it was abolished,
with the intent that other remedies, previously existing and
then adopted, should take its place. See Revisors Rep.
Title 44, p. 735. By chapter 55 of the Acts of 1866, it
was provided that the plaintiff in the action of detinue, desir-
ing to have immediate possession of the property, might
have an order endorsed on the summons, directing the officer
to take the property into his possession, at the commence-
ment of the action, or issued at any time thereafter and be-
fore judgment, on filing an affidavit stating its kind, quantity
and value and his veritable belief in his right to recover the
same, and a bond with good security in a penalty at least
double the value of the property claimed, and conditioned in
the manner prescribed by the act. The difference between
this procedure and that peculiar to the common law action of
replevin consists principally in the order of time in which,
and the persons by whom, the acts are done. In replevin, the
writ issued and the seizure was made before the description
of the property and the value thereof was entered upon
record and became a part thereof, and before security was
given on the part of the plaintiff. After the seizure, the
officer delivered the property to the plaintiff, taking from
him security, not only for the return of it, in case his action

should fail, but also for the prosecution of the action, which amounted to an undertaking as to the justice of his cause, and obliged him to pay such costs and damages as might result to the defendant. By the statute of Westminister II, c. 2, section 3 (13 Edw. I.) the sheriff was required to take pledges for the prosecution of the action and also for a return of the property replevied if a return should be awarded. By the statute of 11 George II, c. 19. section 23, the sheriff was required to take a bond with sureties, in double the value of the property to be replevied, conditioned for the prosecution of the action without delay, and for the return of the property replevied in case a return was awarded. 24 Am. & Eng. Ency. Law 529. The description and the value of the property and the bond for due prosecution of the action and return of the property, in case of failure to make good the claim of title, were all shown by the return of the officer, endorsed upon or annexed to, the writ. Our statute requires a description of the property and its value as well as the bond conditioned for the payment of costs and damages and the forthcoming of the property to answer the judgment of the court, to be put into the record before the order of seizure is issued and before the seizure is made. In view of this substantial analogy between our statutory action of detinue and the common law action of replevin, it is apparent that the principles underlying the latter remedy have been engrafted upon the former. In the common law action of detinue, the property in controversy remained in the possession of the defendant, pending the determination of the right thereto, and judgment was rendered against him for the property, if it could be had, and, if not, for the value thereof. This statutory change enables the plaintiff in that action to do what the plaintiff in the common law action of replevin did, obtain possession of the property pending the litigation. The summons in detinue alone did not, at common law, and does not now, authorize seizure of the property or any interference by the officer with the possession of the defendant. It is only by the affirmative action of the plaintiff that this can take place. The seizure is made at his instance and by his request. By filing the affidavit and giving the bond, he causes the officer to take the property into his possession. He has an election or option to do this or not. After having

done it, it seems to us that his status is substantially that of the plaintiff in an action of replevin. Though he does not have the property in his actual custody, he has, subject to a limitation soon to be mentioned, the power to reduce it to actual possession. He can compel delivery thereof to him. Such delivery is a part of the officer's duty under the writ, and the court will not allow any abuse of its process. The legal duty of its officer will be enforced by means of attachment, fine and imprisonment, if necessary. *Gilmer* v. *August*, 53 W. Va. 65. This right is qualified by the statute to a limited extent only, namely, that the officer must retain possession of the property for three days to enable the defendant to get it back into his possession by giving a counter, or re-delivery, bond in the same penalty and with the same condition as are required in the bond given by the plaintiff. Subject to this right in the defendant, and the duty of the officer to hold the property for this limited time to enable him to avail himself of the right, the property is, in legal contemplation, in the constructive possession of the plaintiff. The sheriff holds it by his permission or sufferance, and, is therefore, his agent. Where the law gives the plaintiff the right to command the sheriff, it is the duty of the latter to obey. Murfree on Sheriffs, section 189; *State* v. *Kirby*, 4 Ired. (N. C.) 90. No doubt, after a counter bond has been given, the defendant could command him, for then the law vests a right in him which the officer must respect. By incorporating into the law of detinue the common law principles of replevin, the legislature signified its intention to make the status of the plaintiff in detinue, when he causes a seizure of property, the same as that of the plaintiff in replevin, except to this extent. By the common law, the plaintiff in replevin kept the property in his possession pending the litigation. There was no provision by which the defendant could take it out of his possession. The legislature qualified the common law in this respect, by inserting the provision, enabling the defendant to regain possession, before it passes into the hands of the plaintiff, by giving the counter bond and allowing him a reasonable time in which to do so. As to the respective rights and liabilities of the parties during the three-day period, we are not called upon to decide, but we have no hesitancy in saying that, after the expiration

thereof, the possession of the officer is the possession of the plaintiff, if no counter bond has been given.

Two decisions of this Court are relied upon as having declared the law to be otherwise than as we have just stated. *Bratt* v. *Marum*, 24 W. Va. 652, and *Altizer* v. *Buskirk*, 44 W. Va. 256. In the first case, the declaration did not allege even the seizure of the property. It set forth the bond, the trial and judgment before the justice of the peace, in which it was ordered that the plaintiff "retain the possession of the said horse," an appeal to the county court, trial there, and a verdict and judgment for the appellant. JUDGE JOHNSON, delivering the opinion of this Court, said it was fatally defective in that it did not allege, that by reason of the execution of the bond, the horse was delivered to the plaintiff in the action, and that, from anything that appeared in the declaration, he might have acquired possession in some other way, as by taking the horse up while running at large, after having broken from the enclosure of the officer, and, further, that there was no allegation that the plaintiff has possession of the horse at all. It is manifest that the Court was not called upon to, and did not, determine, what is a sufficient allegation of possession in the plaintiff, for there was no allegation thereof, nor anything purporting to be. It could not have been determined, whether the possession of the officer was the possession of the plaintiff, for there was no allegation that the officer ever seized or had the horse in his possession. It is true the Court said in the syllabus of the case that a declaration on such a bond, which does not allege that the plaintiff in the action of detinue had possession of the property after the bond was executed is fatally defective, but it did not indicate what facts alleged would be sufficient to charge the plaintiff with possession thereof. The proposition of law enunciated by the Court, as well as the application thereof to the declaration, is absolutely sound, and there is no occasion to find fault with it. The same legal proposition is declared in *Altizer* v. *Buskirk*. The demurrer to the declaration in that case was not predicated upon the lack of an averment of possession in the plaintiff, but upon an entirely different ground, lack of an averment that there was a verdict or judgment in the action of detinue. The declaration having been held good, the case of the plaintiff in the action

on the bond failed for want of proof of the plaintiff's title to the property, and also of its having been taken from him and delivered to the plaintiff in the action. In the opinion, it is said the sheriff's return on the summons in detinue showed that he had delivered to the plaintiff 19 of the logs sued for, but there was no evidence that they had ever gotten possession of the other 81 logs. The verdict and judgment was for an amount greatly in excess of the value of the 19 logs, as to which there was proof of seizure and delivery. Hence the Court said there was a total failure of evidence to warrant the verdict. From all this, it is obvious that the inquiry now presented was not before the court in that case, and that neither of the two cases relied upon will sustain the contention of council for the appellee.

Want of title in the plaintiffs herein to the lumber, sued for in the action of detinue in which the bond was given, is relied upon as justifying the action of the court in directing a verdict; and, if they had no title, the position would be sustained by the principles declared in *Altizer* v. *Buskirk*. But we are of the opinion that they had title. The timber from which the lumber was manufactured belonged to them. Sometime in the year 1905, they entered into an agreement with Samuel Edwards and A. W. Watrous to cut, saw and deliver the same f. o. b. cars at certain prices, and $100.00 was paid them on account of the purchase money. Important stipulations of the contract are these: "This lumber is to be delivered inside of eight months. Party of the first part is to start cutting the lumber and start a saw mill in a few weeks. Party of the second part agrees to pay for all lumber in carload lots as soon as it is loaded on cars." Though several different classes of lumber are mentioned and prices stipulated for the different kinds, nothing is said about the time or place of inspection. At the date of the contract, all of the timber was in the woods uncut, and at the date of the institution of the action of detinue, no part of it had peen loaded on the cars, nor had the purchase money, other than the $100.00, been paid. In fact, practically all of the lumber was on the mill yard some miles from the railroad. After the dismissal of the action, it was all sold to other persons and never delivered to the defendants herein. It must be apparent from this statement that, at the time at which the prop-

erty was seized, as well as at the date of the dismissal of the action and its restoration, something remained to be done to it by the sellers to put it into that state in which the purchasers were bound to accept it. The purchasers could not have been required to accept it then and pay for it. It was not to be paid for until loaded on the cars. It was not contemplated that the purchasers were to accept it at the mill yard, some miles away from the railroad, and pay the expense of hauling and loading it and be responsible for its safety. It was not ready for delivery, nor at the place of delivery. These facts, in the absence of anything showing a contrary intention, are conclusive evidence that the title had not then passed. The *Elgee Cotton Cases*, 22 Wall. 180; *Buskirk Bros.* v. *Peck*, 57 W. Va. 360; *Morgan* v. *King*, 28 W. Va. 1; *Hood* v. *Block*, 29 W. Va. 244. There are many cases in which the facts warrant the conclusion that the title has passed notwithstanding the property remains on the premises, or in the warehouse of the seller, and sometimes this is true when it cannot be removed without the payment of the purchase money, but, in all such cases, it must appear that the seller has done all, or practically all, that it was incumbent upon him to do, to put it into delivery condition. If mingled with other property, it must have been separated and set apart and designated as the particular property sold.. Ordinarily, it must be at the place at which the purchaser agreed to take it, whether that be on the premises of the seller or at some other place to which he was bound to carry it. Here, the matter of separation and designation was not involved, because, by the contract, the sellers bound themselves to cut, saw and deliver all the timber on a certain tract of land on the cars at the railroad; but the important function of hauling and delivering it on the cars had not been performed. This no doubt would have involved expense equal to a dollar or two on the thousand and possibly more. There was a vital difference, too, between accepting responsibility for its safety on a mill yard back in the woods, and accepting it loaded on the cars ready for immediate shipment to the lumber yard of the purchasers or to the market, as the case may have been.

Whether the defendants herein had the right to demand and receive the specific property after it had been delivered to the railroad is immaterial for the purposes of this action.

The damage was inflicted before delivery, and, therefore, before title passed and the loss fell upon plaintiffs in this action. It was their property at the time, and having been injured and part of it lost, it could not have been delivered and the contract price therefor demanded and received.

Our conclusion is that the court erred in directing a verdict for the defendants. The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed. Remanded.*