## Smith Co., Ltd., *v.* Marano, Appellant.

*Contract—Sales—"C. I. F." contract—Definition—Words and phrases—Act of May 19, 1915, P. L. 543—Freight—Insurance—Delivery—Passing of title—Bill of lading—Sight draft.*

1. The letters "C. I. F." are abbreviations of the words "cost, insurance and freight" and when used in connection with commercial quotations, signify that the price to be paid for goods will include all charges to the port of destination.

2. Where the parties to a contract use the initials "C. I. F." and agree that the price quoted and accepted includes "the cost of said goods, the cost of obtaining the customary insurance thereon and freight charges" to the port of destination, the title to the goods passes to the buyer upon the seller's delivery of them to the carrier. If the goods are lost at sea after such delivery, it is the buyer's loss, and he must pay for them.

3. In such case the buyer cannot assert that, under rule 5, section 19, of the Pennsylvania Sales Act of May 19, 1915, P. L. 543, the goods were never delivered to him. If the price had not included insurance, such a claim might well be urged, but reading the contract as a whole, as it must be read with the item for insurance included in it, a "different intention" on the part of the buyer is disclosed from that contemplated by rule 5. If it was the intention of the parties that the property in the goods should not pass to the buyer until at the port of destination, he had no interest in the goods until they reached such port, and the provision with regard to insurance was entirely meaningless and mere surplusage.

4. Where a bill of lading under a "C. I. F." contract is made out to the seller or his order, and immediately endorsed by him in blank and attached to a sight draft drawn upon the buyer, the seller's intention is merely to retain property in the goods to secure performance by the buyer of his promise to pay for them; and the buyer is not, by the express words of section 20 and section 22 (a) of the Act of May 19, 1915, relieved from the risk that was upon him from the time the goods were delivered to the carrier.

Argued January 14, 1920. Appeal, No. 165, Jan. T., 1920, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1917, No. 1801, for plaintiff on case stated in suit of Smith Company, Limited, v. Antonio Marano. Before Brown, C. J., Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Affirmed.

Case stated to determine liability for fish sold by plaintiff to defendant.

The facts are stated in the opinion of the Supreme Court.

The court below in an opinion by Finletter, J., 28 Pa. Dist. R. 848, entered judgment for plaintiff for $3,426.83, being the sum of $2,900 and interest thereon. Defendant appealed.

*Error assigned* was entry of judgment for plaintiff.

*Ralph B. Evans,* of *Prichard, Saul, Bayard & Evans,* for appellant.—The English decisions are not in ac-

cord with the decisions of this court nor with the provisions of the Pennsylvania Sales Act: Pittsburgh Provision & Packing Co. v. Cudahy Packing Co., 260 Pa. 135. See also Berry on Sales (5th ed.) p. 409.

*Francis B. Bracken,* for appellee.—C. I. F. (cost, insurance and freight) means that the seller furnishes the goods, pays the freight and insurance to the point of delivery. All other risks while goods are in transit are for account of buyer: Thames & Mersey Marine Ins. Co. v. U. S., 237 U. S. 19; Ireland v. Livingston, L. R., 5 H. L. 395; Riddle Bros. v. E. Clement Horst Co., H. L. 1912, App. Cas. 18; Arnhold, Karberg & Co. v. Blythe, Green, Jourdain & Co., 1 K. B. 495; Law & Boner, Ltd., v. British America Tobacco Co., 2 K. B. 605; Mee v. McNider, 109 N. Y. 500. Pittsburgh, etc., Co. v. Cudahy Packing Co., 260 Pa. 135, is not in point, as the court there simply held, under the peculiar circumstances of that case, the abbreviation "C. A. F." apparently meant that the price quoted included freight to destination, and had the same significance as "F. O. B. Pittsburgh," and laid down no special rule for the interpretation of a C. I. F. contract with its well known incidents or any other analogous kind of contract.

As to the Sales Act, once it is determined that the parties have expressed their intent by the "C. I. F." contract, as the authorities cited show that they have, rule 5 of section 19 has no application, since it may not be involved where "a different intention appears."

The argument based on the fact that the shipping documents were in the name of the seller, is without weight, since this course was obviously pursued, for the sole purpose of securing performance by the buyer of his obligation to pay on delivery of the documents, which were properly endorsed so as to give him title to the bill of lading and insurance: Sawyer v. Dean, 114 N. Y. 469; Riddell Bros. v. Clement Horst Co., (1912), App. Case

18; C'Lanzer v. Armsby Co., 100 Misc. 476 (N. Y. App.
Div. 1917).

OPINION BY MR. CHIEF JUSTICE BROWN, April 12,
1920:

The facts in this controversy are agreed upon in a case
stated. Smith Company, Limited, is a corporation, with
its place of business in the City of St. Johns, Newfound-
land. The defendant is a resident of the City of Phila-
delphia, this State, and is engaged in business there.
In September, 1916, the plaintiff and defendant, by let-
ters and telegrams, endeavored to complete a contract
for the sale of codfish to the latter. As a result of
preliminary negotiations, on September 26, 1916, plain-
tiff made the following offer to the defendant, by tele-
gram: "Will give you first quality at nine dollars, sec-
ond quality at eight dollars per drum of one hundred
pounds C. I. F. Philadelphia." On the following day the
defendant wired his acceptance of one thousand drums
of the fish, first quality, and by letter of the same date
directed the plaintiff to send with the first shipment of
that quality twenty-five drums of the second quality.
On or about October 4, 1916, the plaintiff shipped three
hundred drums of the fish of first quality and twenty-
five of second quality, in accordance with the terms of
the contract. The goods were shipped by a steamer from
the City of St. Johns, consigned to the plaintiff's agent
at New York, for trans-shipment to Philadelphia, to be
delivered to the order of plaintiff, the bill of lading being
endorsed by the plaintiff in blank. Under the terms of
the contract, the plaintiff paid for the customary marine
insurance on the goods shipped and the freight charges on
them to Philadelphia. It immediately forwarded to the
Girard National Bank of Philadelphia, through a bank
in New York, the insurance policy, endorsed in blank,
the invoice and a through bill of lading, also endorsed in
blank, all attached to a sight draft on the defendant, in
accordance with the contract between them, the draft be-

ing for $2,900, covering the value of the fish shipped. About two days later the ship carrying the fish shipped by the plaintiff to the defendant was sunk by a submarine of the Imperial German Government, on the high seas, while en route to the port of destination, and the goods in question were totally destroyed. The bill of lading and the sight draft were duly tendered to the defendant after the cargo had been destroyed. He refused to accept the draft, and subsequently refused to pay any part thereof. The parties agree that the expression "C. I. F." means that the price quoted by the plaintiff to the defendant, and accepted by him, included the cost of the goods, the cost of obtaining customary insurance thereon and the freight charges to the City of Philadelphia. On the foregoing state of facts the court below entered judgment in favor of the plaintiff for the full amount of its claim.

The letters "C. I. F." are abbreviations of the words "cost, insurance and freight," and, when used in connection with commercial quotations, signify that the price to be paid for goods will include all charges to the port of destination: 11 C. J. 765. The case now under consideration calls upon us for the first time to construe what may be termed a "C. I. F." contract for the purchase of goods, and to determine when, under such contract, there is delivery to the buyer. As just stated, plaintiff and defendant agree that the term "C. I. F." means that the price quoted to the latter and accepted by him included "the cost of said goods, the cost of obtaining the customary insurance thereon and freight charges to the City of Philadelphia." In recognizing that such is the true meaning of the abbreviations, the English courts hold that property purchased under a contract in which they are used passes to the buyer upon the seller's delivery of it to a carrier: Ireland v. Livingston, L. R., 5 H. L. 395; Arnhold Karberg & Company v. Blythe, Green, Joudain & Company (1916), 1 K. B. 495. In this latter case, Mr. Justice BANKES said: "I agree also that the condition of the goods at the time of the tender of

the shipping documents is not material, nor is the value of the documents at the time of tender material. In all such matters the risk is on the buyer. He may be obliged to pay for goods although they may be at the bottom of the sea, or although through some unforeseen circumstance they may never arrive, or although they may have been lost owing to some cause not covered by the agreed form of policy." In Mee et al. v. McNider, 109 N. Y. 500, in following the rule announced by the English courts, it was said: "The answer admits that the letters 'C. F. I.' mean 'to include cost, freight and insurance'; and the question is, who, under the contract, took the risk of the voyage? In the case before us, there seems no ambiguity. On the part of the vendor, the shipment by steamer was an effectual appropriation of the cocoa to the buyer, and at that moment the agreement on the vendor's part was executed......It necessarily follows that injury to the cocoa during the voyage was no excuse for nonperformance." A concise statement of the rule is thus made by Mr. Justice HUGHES in Thames & Mersey Marine Insurance Company, Limited, v. U. S., 237 U. S. 19: "The requirements of exportation are reflected in the familiar 'C. I. F.' contract (that is, at a price to cover cost, insurance and freight), which has 'its recognized legal incidents, one of which is that the shipper fulfils his obligation when he has put the cargo on board and forwarded to the purchaser a bill of lading and a policy of insurance with a credit note for the freight, as explained by Lord Blackburn in Ireland v. Livingston' (L. R., 5 H. L. 395, 406). Stroems Bruks Aktie Bolag v. Hutchison, (1905) A. C. 515, 528. See also Mee v. McNider, 109 N. Y. 500."

Counsel for appellant admit that the judgment of the court below is in accord with the English decisions, followed in this country by the two cases cited, but their contention is that, under the Pennsylvania Sales Act of May 19, 1915, P. L. 543, the property purchased by the defendant was never delivered to him, and the plaintiff

is, therefore, not entitled to recover.    The pertinent parts of that act are as follows:

"Section 18. First. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"Second. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case.

"Section 19. Unless a different intention appears, the following are the rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . . . . .

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The appellant agreed to pay to the appellee a fixed price for the goods to be shipped to him.    The price quoted to him, and which he agreed to pay, included not only the actual value of the fish to the seller, but insurance and freight charges to Philadelphia.    If the price had not included insurance, it might be well urged that, under rule 5 of section 19 of our Sales Act, the goods were never delivered to the appellant; but, reading the contract as a whole—as it must be read—with the item for insurance included in it, "a different intention" on the part of the buyer is disclosed, and the learned court below correctly so held.    If it was the intention of the parties to the contract that the property in the goods sold should not pass to the buyer until delivery to him at Philadelphia, what concern had he about their safe transportation to that port?    By his acceptance of the offer made by the appellee, he admittedly agreed that he would pay a sum to the latter which would cover

marine insurance on the shipment to him.  Under the contention which he now makes, he had no interest in it until it reached him at Philadelphia.  That he did not so intend, and that he must now be held to have understood that the delivery of the goods to the common carrier was a delivery to him, are clearly demonstrated by the court below in the following from its opinion directing judgment to be entered against him: "It is difficult to understand why the buyer should be concerned in any stipulation regarding payment of insurance, either by himself or by the seller, if he had no property in the goods during transit, and consequently no interest in the subject of their insurance.  On the other hand, if he intended that they should pass to him as soon as they were delivered to the steamship the subject of insurance in transit would be vital to him.  We think this reference to insurance in the contract of sales is controlling and significant of the intention of the parties.  If delivery was intended to take place at the end of the voyage the reference to insurance in any communication between the parties was as superfluous as a reference to their insurance before the sale while in the seller's warehouse.  No matter what is to be inferred from the reference to freight, the inference from that to insurance must also have weight.  The contract must be interpreted as a whole.  Both provisions must be explained, interpreted and given their due force.  A provision for the payment of freight by the seller or its inclusion in the price might indicate an intention to deliver at the end of the voyage, or it might be a consideration affecting the price merely, and the cost and uncertainty of the freight charge might be a burden accepted by the seller to expedite the sale.  On the other hand, the provision with regard to insurance was either fully intended, and reasonable because of the risk the buyer intended to assume, or if he did not so intend it was entirely meaningless and mere surplusage."

But a word need be added to the foregoing.  Among the provisions of the Sales Act are the following:

"Section 20......2nd:  Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods.  But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods so shipped and deliverable shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."  "Section 22 (a):  Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract, and the property in the goods has been retained by the seller merely to secure the performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery."  The bill of lading, made out to the appellee or its order, was endorsed immediately by it in blank and attached to the draft drawn upon the appellant.  This merely meant that the appellee intended to retain property in the goods to secure performance by the defendant of his promise to pay for them, and did not, by the express words of the Sales Act, relieve him from the risk that was upon him from the time the goods were delivered to the carrier.

Judgment affirmed.