BRUNO ET AL. v. PHILLIPS AND COMPANY.

[No. 11,638.   Filed January 9, 1924.]

1. SALES.—Passing of Title.—Delivery to Carrier.—General Rule.—Exception.—As a general rule, where goods are bought at one place to be transported to the purchaser at another place, in the absence of an agreement to the contrary, the delivery of the goods sold by the seller to a common carrier, duly consigned to the purchaser, is a delivery to the purchaser, and the title passes at that time, but if goods are sold to be delivered by the seller at the residence or place of business of

Bruno *v.* Phillips & Co.—80 Ind. App. 658.

the purchaser, a delivery to the carrier is not a delivery to the purchaser, for, in such case, the carrier is the agent of the seller and not of the purchaser. p. 661.

2.  SALES.—*Delivery to Carrier.—Consigned to Seller.—Instruction.*—In an action by the seller of merchandise for the price of goods sold and delivered, an instruction that if the goods in question were delivered to a common carrier pursuant to the agreement of parties, addressed to the purchaser, with notice of the shipment, such delivery to the carrier was a delivery to the purchaser, was erroneous, where the uncontradicted evidence was that they were delivered to the carrier but consigned to the seller. p. 661.

3.  SALES.—*Passing of Title.—Delivery at Purchaser's Place of Business.—Time and Place of Payment.*—A contract for the sale of potatoes to be delivered at the purchaser's place of business, where they were to be accepted and paid for, is not consummated so as to pass title to the goods until there is a delivery and payment. p. 663.

4.  SALES.—*Delivery to Carrier.—Bill of Lading in Seller's Name.*—Where the goods are delivered to a carrier for transportation to the purchaser, the taking of a bill of lading in the name of the seller, in the absence of evidence to the contrary, is conclusive evidence that the seller did not intend that the title should pass. p. 664.

5.  SALES.—*Passing of Title.—Executory Contract.*—An executory contract of sale does not pass the title to goods sold, but the goods remain the property of the seller until the contract is executed. p. 665.

6.  SALES.—*Executory or Executed.—How Determined.*—Whether a sale of goods is merely executory or executed depends on the intention of the parties, and is determined from the terms of the contract. p. 665.

7.  SALES.—*Bill of Lading.—In Name of Seller.—Intention of Seller.*—On a sale of goods to be delivered by carrier to another place, the act of the seller in taking a bill of lading to his order as consignee and forwarding the same, with draft attached, to a bank for collection, with direction to deliver on payment of draft, is an admission that he intends to reserve title until the payment of the purchase price. p. 665.

8.  SALES.—*Bill of Lading.—In Name of Seller.—Draft Attached.—No Question for Jury.*—Where there is no evidence to rebut the legal effect and presumption arising from the acts of the seller in having the bill of lading made to himself as consignee, and forwarding the same, with draft attached, to a bank for collection, there is no question of intent to submit to a jury. p. 667.

9. APPEAL.—*Review.*—*Erroneous Instructions.*—Where the complaint was in two paragraphs, on different theories, and erroneous instructions were given as to the law of one of them, the appellate tribunal cannot hold the instructions harmless and affirm the judgment notwithstanding the erroneous instructions where the court is unable to determine on which paragraph the verdict was based. p. 668.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Phillips and Company against Charles Bruno and another, doing business as "Bruno Brothers." From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Edward W. Little, Earl W. Little, Albert F. Wray* and *Michael Sullivan,* for appellants.

*Williams & Pell, Newberger, Simon & Davis* and *Jacob Morgan,* for appellee.

McMAHAN, J.—Appellee is a dealer in produce, and as such maintained a place of business at Presque Isle, Maine. It sold a car of potatoes through a broker to appellants who were in the commission business in Indianapolis. This sale was evidenced by a written sales memorandum, one copy of which was delivered to appellants, another to appellees and one copy retained by the broker. This memorandum stated that the sale was made subject to "usual" terms, and that appellants were to pay a certain price for the potatoes "delivered."

Appellee loaded the potatoes in a car and delivered them to a common carrier at Presque Isle for shipment to Indianapolis and procured a bill of lading wherein it was named both as consignor and consignee. This bill of lading with draft attached was mailed to a bank at Indianapolis, with directions to notify appellants and to deliver the bill of lading on payment of draft. The carrier also was to notify appellants of the arrival of the car.

On arrival of the potatoes, appellants, claiming they

were decayed, refused to accept or pay for them, and later, on order of appellee the broker, as agent for appellee, sold them at a price much less than the price which appellants had agreed to pay. The potatoes were in good condition when delivered to the carrier.

There is a conflict in the evidence as to their condition when they reached Indianapolis.

Complaint by appellee is in two paragraphs. The first paragraph was for merchandise sold and delivered. The second paragraph, after alleging the execution of the sales contract and the shipment of the potatoes as above stated, alleged the refusal of appellants to accept and pay for them, and asked damages because of such refusal. There was a trial by jury, which resulted in a verdict and judgment for appellee. Appellants appeal and contend that the court erred in giving instructions Nos. 8, 9, and 11.

Instruction No. 8, was to the effect that, where goods are bought at one place to be consigned and transported to the purchaser at another place, in the absence of an agreement to the contrary, the general rule is that a delivery by the seller to a common carrier of such goods, duly consigned to the purchaser, is a delivery to the purchaser, and title passes to the purchaser at the time of delivery.

The ninth instruction was to the effect that if the potatoes in question were delivered to a common carrier pursuant to the agreement of the parties, free on board the car, addressed to defendants, with notice of the shipment to defendants, such delivery to the carrier was a delivery to defendants.

By the eleventh instruction the court told the jury that where goods are to be delivered on board cars at a point of shipment to be transported by railroad to a buyer at another place, and the goods are to be paid for in cash, the taking of an "order bill of lading" with

draft attached, is evidence of intention to pass title to buyer at point of loading, subject to a lien of the seller for the price.

According to the undisputed evidence, appellee was to deliver the potatoes to appellants on track in the railroad yard at Indianapolis. The written memorandum of sale stated that they were to be delivered to appellants at a named price according to usual terms. The evidence introduced by appellants and by appellee is that "delivered," as used in the sale contract, meant delivered on board car in the railroad yard at Indianapolis, that the freight was to be paid by appellee, and that "usual terms" meant that bill of lading was to be mailed to bank with draft attached for purchase price and was to be delivered to appellants when they paid the draft.

The rule as stated in the eighth instruction is correct as an abstract statement of the law where goods are delivered to a carrier and consigned to the purchaser, but if goods are sold to be delivered by the seller at the residence or place of business of the purchaser, a delivery to the carrier is not a delivery to the purchaser, for, in such case, the carrier is the agent of the seller and not of the purchaser. *Robbins* v. *Brazil Syndicate, etc., Co.* (1917), 63 Ind. 455, 114 N. E. 737.

In *Sohn* v. *Jervis* (1885), 101 Ind. 578, 1 N. E. 73, the court in discussing this question said: "Here, however, the appellant did not consign the goods to the seller, but consigned them to himself, and there was, consequently, no delivery. The vendee got nothing, could get nothing, for the carrier was not authorized to place the goods in the hands of any other person than the consignee. It is impossible to perceive how there can be a delivery, where both the title and the right of possession remain in the seller."

Since the uncontradicted evidence is that the potatoes

were to be delivered to appellants free on board car at Indianapolis, and that they were consigned to appellee and not to appellants, instructions Nos. 8 and 9 were not applicable to the evidence and should not have been given.

Appellants were not to accept or pay for the potatoes when delivered to the carrier in Maine. Neither were they to pay the freight or be responsible

3. for the safety of the potatoes while in transit. The potatoes were not ready for delivery until they reached the place of delivery. These facts, in the absence of anything showing a contrary intention, are conclusive evidence that the title had not passed to appellants. *Young* v. *Edwards* (1908), 64 W. Va. 67, 60 S. E. 992. No sale upon credit was intended. There was, therefore, no reason why appellee should part with title or possession before the purchase money was paid or tendered. The seller agreed to deliver at Indianapolis. To enable it to do so, possession was indispensable. The contract to deliver at Indianapolis, where it was obviously intended the contract should be consummated by delivery and payment of the purchase price, necessarily leads to the conclusion that the title to the property was not to pass until there was a delivery and payment. *The Elgee Cotton Cases* [*United States* v. *Woodruff*] (1874), 89 U. S. (22 Wall.) 180, 22 I. Ed. 863.

W. T. Phillips, president of appellee corporation, while testifying, said the word "delivered" as used in the sales memorandum meant "delivered on tracks in the city of Indianapolis." While appellants in their counterclaims alleged that under the terms of the sales memorandum the potatoes were to be delivered at their place of business, appellant Charles Bruno, while testifying as a witness, admitted that it was not the understanding or intention of the parties that the potatoes

were to be delivered at their place of business, but that the delivery was to be in the railroad yards at Indianapolis.

We here have a case where the contract for the purchase of a car of potatoes for shipment from a point in Maine to be delivered to the purchaser at Indianapolis, where the seller delivered the potatoes to the carrier, took a bill of lading to its order, endorsed the bill of lading and sent it with draft attached with directions to deliver to the buyer upon payment of the amount named in draft, less the freight which the seller agreed to pay, but which it had not paid because it might be out both the money paid for freight and the potatoes in case they were lost or destroyed; where both buyer and seller understood the potatoes were to be delivered at place of destination and not at point of shipment.

As said in Williston, Sales §280: "Where the seller contracts to deliver the goods at the buyer's residence or at any other particular place, it is the seller's duty to go forward unconditionally with the transportation of the goods to that place. Until he has done that, presumably the property is not intended to pass." To the same proposition, see *McElwee* v. *Metropolitan Lumber Co.* (1895), 69 Fed. 302, 16 C. C. A. 232.

The fact that a bill of lading is taken in the name of the seller, when not rebutted by evidence to the contrary, is decisive to show his intention to preserve *jus disponendi* to prevent the property from passing to the vendee. *Sawyer Medicine Co.* v. *Johnson* (1900), 178 Mass. 374, 59 N. E. 1022; *Furman* v. *Union Pac. R. Co.* (1887), 106 N. Y. 579, 13 N. E. 587. And, as was held in *Sohn* v. *Jervis, supra,* where there is a complete written contract with fixed and known incidents, the rights of the parties cannot be controlled by evidence of a custom contravening the law, or directly violating the terms of the written agreement.

The contract of sale in the instant case was an executory contract of sale. Under such contract, the goods remain the property of the seller until the contract has been executed; and whether, in a particular case, there has been an actual sale, or only an executory contract of sale, depends upon the intention of the parties, which is to be determined from the terms of the contract. *Warner* v. *Warner* (1903), 30 Ind. App. 578, 66 N. E. 760; *Branigan* v. *Hendrickson* (1897), 17 Ind. App. 198, 46 N. E. 560; *Lester* v. *East* (1875), 49 Ind. 588.

5, 6.

In *Neimeyer Lumber Co.* v. *Burlington, etc., R. Co.* (1898), 54 Nebr. 321, 74 N. W. 670, 40 L. R. A. 534, it is said: "A vendor's title to property sold by him is divested on its delivery to his vendee, and immediately upon such delivery the title to the property vests in the vendee; but where delivery of property sold is to take place is, of course, to be determined by the contract between the vendor and vendee; and if the contract between the parties expressly provides that delivery shall be made at a certain place, then the vendor's title to the property is not divested until delivery is made at such place."

We know of no case, where the seller agreed to deliver the property at a distant place, holding that the seller has fulfilled his contract when he delivered the property to a carrier, taking a bill of lading to himself as consignee. Where the buyer is to pay for such property on delivery at point of destination, the fact that the shipper takes a bill of lading to his order and forwards the same with a draft for the purchase money to a bank at place of destination, is not of itself evidence of an intention of the buyer and seller that title should pass before the property reached the point of destination. The undisputed evidence in this case shows that title and possession of the prop-

7.

erty in question remained in appellee. The taking of the bill of lading to order of appellee and forwarding the same with the draft were entirely consistent with the legal conception of this contract—that the title remained in the shipper. The potatoes never having been delivered to appellants, appellee having both title and possession, the law giving the seller a lien for the purchase price is not applicable.

The act of appellee in taking the bill of lading to its order as consignee and forwarding the same with the draft with direction to deliver on payment of draft, is an admission on its part of an intention to reserve title until the payment of the purchase price. *Emery's Sons* v. *Irving National Bank* (1874), 25 Ohio 360, 18 Am. Rep. 299.

"Where, however, the seller expressly or impliedly undertakes to deliver the goods at the place where the buyer desires to have them, then, obviously, the delivery to the carrier is but one step in the performance of the seller's undertaking. The carrier, in this case, is the seller's agent, and the seller's duty is not performed until the goods have been transported to, and delivered at, their stipulated destination. Until that time the goods are at the seller's risk." 2 Mechem, Sales §1184. The delivery is complete as soon as, but not sooner than, the goods are unreservedly and unconditionally placed at the buyer's disposal, without the reservation of any other claim upon the goods than that of stoppage *in transitu.* 2 Mechem, Sales §§1187, 1195.

The same author, in discussing the effect of taking a bill of lading to seller's order, stipulating that the property is to be delivered to himself or to his order in 1 Mechem, Sales §774, says: "There is the clearest possible evidence upon the face of the transaction that, notwithstanding such an appropriation of the goods as might have been sufficient to transfer the title to the

buyer, the seller has determined to prevent this result by keeping the goods within his own control." The author then cites *Dows* v. *Nat. Exch. Bank* (1875), 91 U. S. 618, 23 L. Ed. 214, to sustain the statement that, while such evidence is not absolutely conclusive, "it is held to be almost conclusive." And in 1 Mechem, Sales §779, it is said: "Equally significant of the intention is the case in which the bill of lading, taken to the order of the seller, is endorsed by him and attached to a draft upon the purchaser for the price; and the draft is then delivered to a bank for collection, or is discounted by the bank in reliance upon the security afforded by the bill of lading. In such a case presumptively no title passes to the purchaser until by payment of the draft he has duly obtained the possession of the bill of lading, although the goods have been sent in the buyer's own ship."

In *Dows* v. *Nat. Exch. Bank, supra,* the court held that an inference that the seller intended to pass title was forbidden, and that no such intent could be implied in the face of the express arrangements and positive orders.

The legal effect of the transaction in the instant case is to reserve the title in the seller until the purchase price has been paid. The sending of the bill of lading with the draft was evidence in support of the rule instead of being evidence to overthrow or rebut the rule by showing an intention of the seller to part with title. When there is no evidence to rebut the legal effect and presumption arising from the bill, there is no question of intention to submit to a jury. The legal presumption must and does control. *Kentucky, etc., Co.* v. *Globe Refining Co.* (1898), 104 Ky. 559, 47 S. W. 602, 42 L. R. A. 353, 84 Am. St. 468; *Willman Mercantile Co.* v. *Fussy* (1895), 15 Mont. 511, 39 Pac. 738, 48 Am. St. 698. The court also erred in

giving the eleventh instruction. *Smith Co.* v. *Marano* (1920), 267 Pa. 107, 110 Atl. 94, 10 A. L. R. 697, cited by appellee to sustain instruction No. 11, is of no controlling influence. The goods in that case were sold "C. I. & F." and the contract of sale was controlled by a statute which by express words relieved the shipper from the risk that was upon him from the time the property was delivered to the carrier.

Appellee contends that the merits of the cause have been fairly tried and determined, and that the judgment should be affirmed notwithstanding any error in the instructions. This contention cannot prevail, as we are not able to say that the merits of the cause were fairly tried and determined, since the verdict may be based on the first paragraph of complaint.

Judgment reversed, with directions to sustain appellants' motion for a new trial, and for further proceedings consistent with this opinion.