S. RAMÍREZ & Co., INC., Plaintiff and Appellant, *v.* JOSÉ GONZÁLEZ CLEMENTE & Co., Defendant and Appellee.

No. 6039.  Argued May 4, 1933.—Decided April 11, 1934.

*Francisco Parra Capó* and *Francisco Parra Toro* for appellant.  *G. López de Victoria* for appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The plaintiff appeals from a judgment dismissing its complaint, with costs, after the trial court had held that the complaint did not state facts sufficient to constitute a cause of action, as alleged by the defendant in the demurrer that it interposed to the complaint.

This is an action to recover the price of some merchandise sold, and the only ground for holding the complaint insufficient was that it failed to allege that said merchandise had been deposited judicially in favor of the purchaser, as provided in section 332 of the Code of Commerce.  The appel-

lant urges that it was not bound to make such deposit in the instant case, for which reason its complaint is sufficient without such allegation.

The legal provisions to which we have referred read as follows:

"If the purchaser refuses without just cause to receive the goods bought, the vendor may demand the fulfillment or rescission of the contract, depositing the merchandise in court in the first case.

"The same judicial deposit may be made by the vendor whenever the purchaser delays in taking charge of the merchandise.

"The expenses arising from the deposit shall be defrayed by the person who caused the deposit to be made."

The plaintiff is a corporation domiciled in this city of San Juan, and the defendant is a partnership with domicile in Mayagüez, Puerto Rico. Both are engaged in commercial operations.

The contract entered into by both parties is transcribed in the complaint, and reads as follows:

"S. Ramírez & Co.—San Juan, P. R.—Established in 1898.— Specializes in rice, salted meats and fish, Chicago products, beans, chickpeas (garbanzos), etc.—Modern refrigerating plant.—October 15, 1930.—Sold to José González Clemente & Co., Mayagüez, P. R.— Three hundred (300) sacks of California pink beans, new crop (Choice Recleaned Pinks) at $5.10.—C.i.f. Mayagüez, draft against bill of lading.—For shipment from San Francisco during first fortnight in November, subject to all traffic contingencies.—San Juan, P. R., Oct. 15, 1930.—We must be advised by cable, for our account, of date of shipment and route.—(Signed) José G. Clemente & Co., purchasers.—S. Ramírez & Co., sellers."

In the second amended complaint it is also alleged that the plaintiff fully carried out the said contract; that he notified the defendant of the date of shipment and the route; that the merchandise arrived at Mayagüez, and that the defendant refused to accept it and to pay the draft drawn against it for its price.

The commercial contract of sale contained the "c.i.f." clause, and the fundamental question involved in this litigation is in regard to the effect of such clause in the contract.

The letters "c.i.f." are the initials of "cost, insurance, and freight," and these words, so abbreviated, mean that the purchaser will pay the cost of the merchandise, that of its insurance, and the freight charges thereon. In regard to this there is no dispute between the parties, but there is in regard to its effect.

The rule established by many decisions in the courts of the United States and of England is that when, under contracts containing the "c.i.f." clause, the seller delivers the merchandise to a carrier for transportation to its destination, this is a delivery to the purchaser, who, from that time, runs all risks in regard to the merchandise, including the risk of its total loss. Thus, in the case of *Smith* v. *Maraño*, decided in 1920 by the Supreme Court of Pennsylvania, 267 Pa. 107, 110 Atl. 94, cited in 10 A.L.R. 697, the merchandise, under a "c.i.f." contract, was shipped in a boat bound for Philadelphia, but the said boat was sunk by a German submarine and all the merchandise was lost. In the claim made by the seller for the payment of the merchandise by the purchaser, the following was said: "As just stated, plaintiff and defendant agree that the term 'c.i.f.' means that the price quoted to the latter and accepted by him included 'the cost of said goods, the cost of obtaining the customary insurance thereon, and freight charges to the city of Philadelphia.' In recognizing that such is the true meaning of the abbreviations, the English courts hold that property purchased under a contract in which they are used passes to the buyer upon the seller's delivery of it to a carrier." Judgments are cited, to one of which the court refers, saying: "In this latter case, Mr. Justice Blankes said: 'I agree also that the condition of the goods at the time of the tender of the shipment documents is not material, nor is the value of the documents at the time of tender material. In all such matters the risk is on the buyer. He may be obliged to pay for goods although they may be at the bottom of the sea, or although through some unforeseen circumstance

they may never arrive, or although they may have been lost owing to some cause not covered by the agreed form of policy.' '' In another case, that of *Mee* v. *McNider*, 109 N.Y. 500, 17 N.E. 424, confirmed by the Supreme Court of New York in 39 Hun. 345, the following was said: ''On the part of the vendor, the shipment by steamer was an effectual appropriation of the cocoa to the buyer, and at that moment the agreement on the vendor's part was executed. . . . It necessarily follows that injury to the cocoa during the voyage was no excuse for non-performance; . . .'' In that case was cited the rule established by Mr. Justice Hughes in *Thames & M. Marine Ins. Co.* v. *United States*, (1915) 237 U.S. 19, as follows: ''The requirements of exportation are reflected in the familiar 'c.i.f.' contract (that is, at a price to cover cost, insurance, and freight), which has its recognized legal incidents, one of which is that the shipper fulfils his obligation when he has put the cargo on board and forwarded to the purchaser a bill of lading and policy of insurance with a credit note for the freight, as explained by Lord Blackburn in *Ireland* v. *Livingston* . . . See also *Mee* v. *McNider*, 109 N.Y. 500.''

In the case of *Law & Bonar* v. *British American Co.*, (1916) 2 K.B. (Eng.) 605, certain merchandise was bought under a ''c.i.f.'' contract, and it was stipulated that the risks of the merchandise would be on the seller until its actual delivery to the purchaser. The merchandise was shipped before the European War, and its insurance did not cover that kind of risk. The boat that carried the merchandise was afterwards sunk by a German cruiser, and the purchaser refused to receive the shipping documents and to pay for the merchandise. In the suit instituted by the seller to recover damages for breach of the contract, it was declared that he was entitled to recover, and that the clause that provided that the risks of the merchandise would be for account of the seller until the actual delivery, was in conflict with the other stipulation of the contract. In *Smith Co.* v. *Moscahlades*, (1920) 193 App.

Div. 126, 183 N.Y. Supp. 500, the above rule was applied although it was stipulated in the contract that delivery should be made at destination.

In Spain, the Supreme Court in a judgment of May 1, 1903, declared that "only in case of the lack of actual or constructive delivery of the merchandise sold is the seller bound to deposit the same judicially in order to demand its price, according to the provisions of sections 332 and 339 of the Code of Commerce; and that constructive delivery by which the seller himself becomes a mere depositary, exists not only when, according to section 339, the merchandise is placed at the disposal of the purchaser and the latter considers himself satisfied therewith, but also when, beforehand, at the time the contract is made, the purchaser himself expresses like conformity with the seller's having or placing at his disposal the thing sold, as it is indisputable that in regard to the form in which delivery of the merchandise is to be considered as made, as well as in regard to any other accidental circumstance of the sale contract, stipulations can be freely made, such stipulations being binding on the contracting parties."

Our decisions cited by the appellee in support of the judgment appealed from are not applicable to the present case, because in them it was not held that a delivery of the merchandise by the seller to a carrier is not a delivery to the buyer.

In view of the jurisprudence cited, it must be concluded that, since the seller delivered the merchandise to the purchaser in San Francisco, California, he did not have to deposit it judicially in order to claim the payment of its price.

The order of the lower court holding that the allegations of the complaint were insufficient for the action brought, and the judgment dismissing the same must both be reversed, as well as the imposition of costs on the plaintiff, and the case remanded to the lower court for further proceedings not inconsistent with this opinion.