S. Ramírez & Co., Inc., demandante y apelante, *v.* José González Clemente & Co., demandada y apelada.

No. 6039.—*Sometido:* Mayo 4, 1933. *Resuelto:* Abril 11, 1934.

*Francisco Parra Capó* y *Francisco Parra Toro,* abogados de la apelante; *G. López de Victoria,* abogado de la apelada.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

La demandante apela de una sentencia que declara sin lugar su demanda con las costas después de haber declarado la corte sentenciadora que la demandada no aduce hechos determinantes de causa de acción, como alegó la demandada en la excepción previa que adujo contra la demanda.

Se trata de una demanda para que se condene a la demandada a pagar el precio de una mercancía y el único fundamento para haber sido declarada insuficiente es que no alega que dicha mercancía ha sido depositada judicialmente a favor de la compradora, según dispone el artículo 332 del Código de Comercio. El apelante alega que no tiene el deber de hacer tal depósito en este caso por lo que su demanda es suficiente sin tal alegación.

El precepto legal a que nos hemos referido dice así:

"Si el comprador rehusare sin justa causa el recibo de los efectos comprados, podrá el vendedor pedir el cumplimiento o rescisión del contrato, depositando judicialmente en el primer caso las mercaderías.

"El mismo depósito judicial podrá constituir el vendedor siempre que el comprador demore hacerse cargo de las mercaderías.

"Los gastos que origine el depósito serán de cuenta de quien hubiese dado motivo para constituirlo."

La demandante es una corporación y la demandada una sociedad con residencia en esta ciudad de San Juan la primera y en Mayagüez, Puerto Rico, la segunda, estando ambas dedicadas a negocios mercantiles.

En la demanda se copia el contrato que ambas partes celebraron, que es así:

"Sr. Ramírez & Co.—San Juan, P. R.—Casa fundada en 1898.— Especializa en arroz, salazones, productos de Chicago, habichuelas, garbanzos, etc. Planta frigorífica moderna.—Fecha octubre 15, 1930. —Vendido a José González Clemente & Co., Mayagüez, P. R.—300 (trescientos) sacos de Habichuelas rosadas de California, de la nueva cosecha (Choice Recleaned Pinks) a $5.10.—Cif Mayagüez, giro contra conocimiento. Para embarque de San Francisco en la primera quincena de noviembre, sujeto a todas las contingencias del tráfico.— San Juan, P. R., Oct. 15, 1930.—Debiéndosenos avisar por cable de cuenta nuestra, la fecha del embarque y la vía de expedición.—(Fdos.) José G. Clemente & Co., compradores.—S. Ramírez & Co., Vendedores."

También se alega en la segunda demanda enmendada que la demandante cumplió en todas sus partes dicho contrato, que avisó a la demandada la fecha del embarque y la vía de expedición, que la mercancía llegó a Mayagüez y que la demandada se negó a recibirla y a pagar el giro que contra ella fué librado por el precio de la mercancía.

El contrato de compraventa mercantil fué celebrado con la cláusula "c. i. f.", y la cuestión fundamental en este litigio es sobre el efecto de tal cláusula en el contrato.

Las letras "c. i. f." son las iniciales de las palabras ingle-

sas "cost, insurance, freight," que equivalen a las palabras españolas "costo, seguro, flete." Esas palabras así abreviadas significan que el comprador pagará el precio de la mercancía, el de su seguro y el de su flete. Sobre esto no hay discusión entre las partes pero sí sobre sus efectos.

La jurisprudencia resultante de muchas decisiones de los tribunales de los Estados Unidos y de Inglaterra es que cuando en contratos que contienen la cláusula "c. i. f." el vendedor entrega la mercancía a un porteador para su conducción al punto de su destino, la mercancía queda entregada al comprador, quien desde entonces sufre los riesgos de ella y los de su pérdida total. Así, en el caso de *Smith* v. *Maraño*, resuelto en 1920 por la Corte Suprema de Pennsylvania, 267 Pa. 107, 110 Atl. 94, citado en 10 A.L.R. 697, en un contrato "c. i. f." la mercancía fué embarcada en un buque con destino a Filadelfia pero dicho buque fué hundido por un submarino alemán perdiéndose totalmente esa mercancía. En la reclamación que para el pago de ella por el comprador hizo el vendedor, se dijo lo siguiente: "Como queda dicho, el demandante y el demandado están de acuerdo en que la cláusula 'c. i. f.' significa que el precio fijado y aceptado por el último incluye 'el precio de dicha mercancía, el del seguro acostumbrado de ella y el del flete hasta la ciudad de Filadelfia.' Reconociendo que tal es el verdadero significado de esas abreviaturas, las cortes inglesas han resuelto que efectos vendidos bajo un contrato en que son usadas, pasan al comprador al ser entregados por el vendedor a un porteador." Se citan sentencias, a una de las cuales se refiere la corte, diciendo: "En el último caso el Juez Presidente Bankes dijo: 'Convengo también en que la condición de la mercancía en el momento de ser entregados los documentos de embarque no es importante, ni lo es el valor de los documentos al tiempo de ser ofrecidos. En todas esas cuestiones el riesgo es para el comprador. El puede ser obligado a pagar la mercancía aunque pueda estar en el fondo del mar, o aunque por alguna

circunstancia imprevista nunca pueda llegar, o aunque se haya perdido debido a alguna causa no cubierta por la póliza.' '' En otro caso de *Mee* v. *McNider,* 109 N. Y. 500, 17 N. E. 424, confirmado por la Corte Suprema de New York en 39 Hun. 345, se dijo: ''Por parte del vendedor el embarque por vapor constituyó una entrega efectiva del cacao al comprador y desde ese momento la obligación del vendedor en el contrato quedó cumplida. ... De ahí se desprende necesariamente que el daño sufrido por el cacao durante el viaje no fué excusa para incumplimiento.'' En ese caso se cita la regla sentada por el Juez Hughes en *Thames & M. Marine Ins. Co.* v. *United States* (1915) 237 U. S. 19, así: ''Las exigencias de la exportación están reflejadas en el contrato familiar 'c. i. f.' (esto es, un precio que cubre costo, seguro y flete) que tiene sus incidentes legales reconocidos, uno de los cuales es que el embarcador cumple su obligación cuando ha puesto la mercancía a bordo y envía al comprador el conocimiento de embarque y una póliza de seguro con una nota de crédito por el flete, según expone Lord Blackburn en Ireland v. Livingston . . . Véase también Mee v. McNider, *supra.*'' En otro caso, *Law & Bonar* v. *British American Co.,* (1916) 2 K. B. (Eng.) 605, se compró cierta mercancía en un contrato ''c. i. f.'' y se estipuló que los riesgos de la mercancía serían por cuenta del vendedor hasta su entrega efectiva al comprador. La mercancía fué embarcada antes de la guerra europea sin que la póliza de seguro cubriera esa clase de riesgo. El buque que conducía la mercancía fué hundido después por un crucero alemán y el comprador se negó a recibir los documentos de embarque y a pagar la mercancía. En el pleito que estableció el vendedor para recobrar daños por incumplimiento del contrato se declaró que tenía derecho a recobrarlos y que la cláusula que disponía que los riesgos de la mercancía serían de cuenta del vendedor hasta la entrega efectiva (*actual*) era repugnante a la otra estipulación del contrato. Y en *Smith Co.* v. *Moscahlades,* (1920) 193 App. Div. 126, 183 N. Y. Supp. 500, se aplicó la anterior regla

aunque se estipulaba en el contrato que la entrega debía ser hecha en el punto de su destino.

En España ha declarado su Tribunal Supremo en sentencia de 1 de mayo de 1903 que "únicamente a falta de tradición real o ficta de las mercaderías vendidas está obligado el vendedor a depositarlas judicialmente para demandar el precio, conforme a lo prescrito en los artículos 332 y 339 del Código de Comercio; y que la tradición ficta, mediante la cual queda el mismo vendedor convertido en mero depositario, existe no tan sólo cuando, según dicho artículo 339, se pone la mercancía a disposición del comprador y éste se da con ello por satisfecho, sino también cuando de antemano, al celebrarse el contrato, prestase el mismo comprador análoga conformidad con el hecho de tener o poner el vendedor a su disposición la cosa vendida, por ser inconcuso que sobre la forma en que ha de reputarse hecha la entrega de la mercancía, así como sobre cualquier otra circunstancia accidental del contrato de venta, puede pactarse libremente, siendo lo pactado obligatorio para los contratantes."

Las decisiones nuestras que la apelada cita para sostener la sentencia recurrida no son aplicables al caso presente porque en ellas no se ha resuelto que la entrega de la mercancía por el vendedor a un porteador no sea la entrega al comprador.

En vista de las sentencias citadas hay que concluir que toda vez que la mercancía fué entregada por el vendedor el comprador en San Francisco de California, no tenía que depositarla judicialmente para reclamar el pago de su precio.

*La resolución de la corte inferior declarando que las alegaciones de la demanda no son suficientes para la acción que ejercita y la sentencia que la declara sin lugar, deben ser revocadas y también la condena en costas a la demandante, devolviéndose el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*