**YORK–SHIPLEY, INC., Plaintiff-Appellee,**

v.

**ATLANTIC MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.**

No. 72-2361.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1973.

Roland R. Parent, Miami, Fla., Joseph J. Magrath, New York City, for defendants-appellants.

Adams, George & Wood, Miami, Fla., for Atlantic Mut. Ins. Co.

Thomas J. Schulte, Suarez, Carricarte & Freire, Miami, Fla., for Int'l Fwdrs.

Before BELL and THORNBERRY, Circuit Judges, and GROOMS, District Judge.

PER CURIAM:

◼ In this cargo insurance case, the district court found that at the time of the damage, the plaintiff-appellee, York-Shipley, Inc., was the owner of the boiler in question. This was clearly erroneous since the cargo was shipped C.I.F. port of destination. Title to the boiler passed to the consignee when it was shipped from Miami in accordance with the terms of the contract. York-Shipley had no property rights in the boiler at the time it was damaged, and therefore had no insurable interest. Because York-Shipley, Inc. lacks standing to bring this suit, we need not reach the other errors assigned. We reverse.

York-Shipley held an ocean marine open cargo policy issued to it by the appellant, Atlantic Mutual Insurance Co., covering all of York-Shipley's international shipments of "lawful goods and merchandise consisting principally of heating equipment and parts." The policy contained a provision reading in pertinent part, as follows:

> "Authority is hereby given to the assured to issue this company's special policies of insurance which will be supplied on request. Such special policies are to be issued only in accordance with the terms and conditions of the policy, and are not transferable unless countersigned by the assured."

Such special policies are used when an assured sells on terms (e. g., C.I.F.) which require it to obtain insurance for the benefit of its customers abroad. The special policy takes the place of the open policy with respect to the particular shipment for which it is issued and contains, in full or by reference, all of the provisions necessary to single shipment insurance.

In the instant case, such a special policy was issued covering two boilers while in transit from Miami to Guatemala, and the policy was forwarded, along with the bill of lading and freight receipt, to York-Shipley's consignee in South America. In effect, then, as regards the insurance, York-Shipley was merely the agent of its foreign customer for obtaining insurance on the goods sold.

Article 2, § 320 of the Uniform Commercial Code defines the term "C.I.F." to mean "that the price includes in a lump sum the cost of goods and the insurance and freight to the named destination. . . ." Section 320 also spells out the duties of the seller under a C.I.F. destination contract: (1) he must put the goods into the possession of a carrier at the port of shipment and obtain a bill of lading, (2) load the goods and obtain a receipt from the carrier showing that the freight has been paid, (3) obtain a policy of insurance covering the goods while in transit,' (4) prepare an invoice of the goods and procure any other documents required to offset shipment or comply with the contract, and (5) forward and tender with commercial promptness all the documents in due form and with any indorsement necessary to perfect the buyer's rights. Section 320 concludes that "[u]nder the term C.I.F. . . . unless otherwise agreed the buyer must make payment against tender of the required documents and the *seller may not tender nor the buyer demand delivery of the goods in substitution for the documents.*" (Emphasis supplied). Under the UCC, as well as at common law, title to goods shipped C.I.F. passes upon their delivery to the carrier. UCC Art. 2, § 401; *see id.* art. 2, § 509; Smith Co. v. Marano, 1920, 267 Pa. 107, 110 A. 94. *See generally* Bender's U.C.C. Service, Dursenberg & King, Sales and Bulk Transfers § 8.02[2][b] at 8–17 (1968).

██ Accordingly, once York-Shipley put the boilers in the possession of the carrier in Miami, it no longer had any interest in them. Indeed, it was pro-hibited from tendering the goods instead of the appropriate documents. York-Shipley therefore has˙ no insurable interest in the cargo and, consequently, has no standing to sue. Standing depends upon whether the party has such a "personal stake in the outcome of the controversy as to assure . . . concrete adverseness. . . ." Baker v. Carr, 1962, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663; *See* Sierra Club v. Morton, 1971, 405 U.S. 727, 732, 92 S. Ct. 1361, 31 L.Ed.2d 636; Flast v. Cohen, 1968, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947. *York-Shipley* has no interest in the outcome of this suit, other than that of an unsecured creditor of its foreign customer. Such an interest is insufficient to meet the requisites of standing.

Reversed.