546 F.2d 631
 WITCO CHEMICAL COMPANY, INC., et al., Plaintiffs-Appellants
Cross Appellees,
v.
CONSOLIDATED TERMINALS CORPORATION, Defendant-Appellee Cross Appellant,
The Continental Insurance Company et al.,
Defendants-Appellees, Cross Appellants.
WITCO CHEMICAL COMPANY, INC., et al., Plaintiffs-Appellees,
v.
CONSOLIDATED TERMINALS CORPORATION et al., Defendants,
Evans Cooperage Company, Inc., Defendant-Appellant.
 Nos. 75-2145, 75-4198.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 4, 1977.
 
 John J. Broders, New Orleans, La., for plaintiffs-appellants in No. 75-2145 and plaintiffs-appellees in No. 75-4198.
 Cornelius G. Van Dalen, New Orleans, La., for Continental Ins. Co.
 Michael A. Dessommes, New Orleans, La., for Conso. Terminals Corp.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before AINSWORTH and CLARK, Circuit Judges, and HUGHES,* District Judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 This Louisiana diversity suit involves a claim for damages by Witco Chemical Corporation against Consolidated Terminals Corporation and its insurer, Continental Insurance Company, growing out of the negligent commingling of a large quantity of oil in storage tanks of Consolidated. The matter was heard before a magistrate whose findings were adopted by the district court with slight modification, resulting in judgment for damages in favor of Witco against Consolidated. The court also held that there was no insurance coverage and therefore that Continental was not liable. Witco has appealed on the ground that damages awarded are inadequate; Consolidated has appealed on the ground that no damages should have been awarded, and that there should have been judgment, alternatively, against Continental.
 
 
 2
 Witco joined an additional defendant, Evans Cooperage Company, Inc., alleging that Evans, the sole owner of all the capital stock of Consolidated, was liable for debts owed by Consolidated because Evans liquidated Consolidated and paid over to itself all of the cash and assets realized in the liquidation. The district court held against Evans in this regard and that defendant has appealed in a separately docketed appeal, which is now before us.
 
 
 3
 By written purchase order Witco agreed to sell to Shima Trading Company, Ltd., a Japanese company, 1,550 metric tons (199,000 gallons) of Plastic 250 White Oil, a special kind of petroleum product used in the plastics industry. The oil was to be shipped in bulk via the tanker M/V Stolt Braali, sailing from Harvey, Louisiana, to Japan around the end of March 1971. Witco stored the oil with Consolidated in its tanks at Harvey, awaiting arrival of the vessel at that point for shipment to Japan. The oil was negligently commingled by Consolidated with other oil resulting in contamination so that it was unsuited for the purpose for which it was purchased. Witco contends, and offered evidence to show, that as a result of Consolidated's negligence and to comply with its order from Shima for white oil it became necessary to ship by barrel rather than by tanker in bulk as originally planned. Witco contends that it was unable (though it tried) to obtain other tanker services because of the special character of the petroleum product, thus that additional expenses were incurred for the drums, handling, freight, etc., all as a consequence of Consolidated's negligence in contaminating the oil.
 
 
 4
 Consolidated conceded its negligence and the case was referred to the magistrate for trial on the issue of damages and on that of coverage of Continental Insurance Company. The magistrate found that Witco was entitled to judgment for $15,709.13 which was later amended by the district judge who added $825 to the judgment. Several items of damages made up this total judgment, consisting of "dead freight" charge for the M/V Stolt Braali, tank rental payments to Consolidated, sampling and analysis, freight on drums from Gretna, Louisiana, to Port of Embarkation at New Orleans, miscellaneous freight and "thru put" deficiency charges. All of these expenses were incurred stateside and are amply sustained by the record. The magistrate, however, declined to award the further sum of $31,857.65 damages which Witco claimed for having reimbursed Shima for its increased handling costs at destination as a result of Witco having to ship oil by barrel rather than in bulk. The magistrate also held that Continental's policy of liability insurance did not cover the damages involved in Witco's claim since Witco was able to reconstitute the contaminated product and sell it at a small profit therefore, that there was no "direct physical loss or damage" to the oil while in custody of Consolidated, all of the damages Witco claimed herein being consequential damages which are not covered in the liability policy.
 
 
 5
 The magistrate's finding that Witco is not entitled to recover further damages of $31,857.65 is based on his reasoning that when Witco delivered the oil to Consolidated, its obligation to Shima was completed, and that the risk of loss of the oil thereafter was Shima's which would be the proper party to assert this claim. The magistrate also found that the additional items of damage which were incurred by Shima and reimbursed to it by Witco were not recoverable because of failure of proof, the evidence submitted being inadequate to prove the claim.
 
 
 6
 We disagree with both findings. Though it is true that the general contract between Witco and Shima specifies that all merchandise shall be sold F.A.S. (free alongside ship) New York and/or New Orleans, it also provides for the possibility that C.I.F. and/or C. & F. quotations may be made by the parties. This in fact is what occurred in the specific written purchase order for the white oil involved here which stated that its terms were C. & F. (cost and freight).
 
 
 7
 The parties concede that if the shipment was in fact F.A.S., Witco is not the proper party to make claim for damages incurred in Shima's additional handling costs since the risk of damage to the oil would be Shima's from the time the oil was placed in Consolidated's storage tanks. See Tex-O-Kan Flour Mills Co. v. NORD, La.App., 1944, 18 So.2d 50. On the other hand, if the shipment was C. & F., the risk was Witco's rather than Shima's when the oil was placed in Consolidated's tanks, and Witco is the proper party plaintiff. See York-Shipley, Inc. v. Atlantic Mutual Ins. Co., 5 Cir., 1973, 474 F.2d 8.
 
 
 8
 The magistrate found that the shipment of oil in question was designated to be shipped C. & F. but denied recovery to Witco, holding that the risk was Shima's rather than Witco's.
 
 
 9
 In our view the written purchase order of Shima to Witco governs and the shipment was in fact made C. & F. This holding is not inconsistent with the general contract between these parties, as we have indicated above.
 
 
 10
 Nor do we agree with the finding of the magistrate that Witco failed to prove the damages which occurred in Japan in increased expenses incurred by Shima in handling the shipment by barrel rather than in bulk. The statement of Shima's additional expenses is contained in numerous invoices placed in the record by Witco. Though they are stated in Japanese, English translations appear at critical points on the invoices. Witco likewise produced written proof of payment by it of Shima's additional expenses. This, coupled with the testimony of Mr. Rodriguez, the sales manager for Witco who went to Japan when contamination of the oil occurred in order to find suitable ways of providing this petroleum product for its purchaser, Shima, causes us to conclude that at a minimum Witco established a prima facie case. No rebuttal evidence was offered by Consolidated to the contrary, and since there is no reason not to believe it to be correct, it is sufficient to establish the additional damages in this case. See New Orleans Public Service, Inc. v. Jet Cab Co., La.App., 1974, 290 So.2d 381; Mut v. Newark Insurance Company, La.App., 1973, 289 So.2d 237; United States F. & G. Co. v. Allright Shreveport, Inc., La.App., 1972, 256 So.2d 479; cf. Illinois Central Railroad Company v. Cullen, La.App., 1970, 235 So.2d 154. It is reasonable to believe that all of the items of damages, both stateside and in Japan, were a consequence of the negligence of Consolidated in contaminating the oil in its tanks, and we so hold. Accordingly, the magistrate and district court were in error in failing to award the full amount of damages and expenses incurred by plaintiff Witco, including the sum of $31,857.65 in addition to the damages of $16,534.13 which were awarded below to Witco.[1]
 
 
 11
 The magistrate's finding that Continental Insurance Company was not liable under the circumstances is correct, however. It is clear that Continental's liability policy covered only direct physical loss or damage to the oil while in Consolidated's tanks. The damages incurred here were not to the contents but were due to additional handling required by having to ship another quantity of the same product by barrel rather than in bulk as originally contemplated.
 
 Evans' Liability
 
 12
 Evans Cooperage Company, Inc. was joined as a defendant on the basis of its ownership of all of the capital stock of Consolidated and of its receipt of all of Consolidated's assets on liquidation thereof except those amounts paid to the creditors other than Witco. It appears that Consolidated is now defunct. The trial of the matter of Evans' possible liability was deferred until the original claim of Witco against Consolidated could be heard and determined. Judge Rubin then considered the liability of Evans on stipulated facts and awarded judgment in favor of Witco against Evans for the amount of damages which the district court originally awarded (reduced pursuant to a mathematical formula of total assets at the time of distribution over all of the debts of Consolidated at the time of distribution resulting in a fractional percentage forming the basis for computing the judgment).
 
 
 13
 The pertinent facts are as follows: Evans owned all of the capital stock of Consolidated, which was indebted to Evans for $841,064.31. Consolidated sold all of its physical assets to Delta Commodities for $899,507.17 represented by $410,000 cash and $480,507.17 in a promissory note. Consolidated owed creditors other than Evans $204,562.39 (not including contingent liability of Witco and/or Shima). Consolidated's total assets after the sale to Delta Commodities amounted to $995,582.79. All of the creditors were paid in full except Witco and the balance of $791,020.40 in assets all that it had was then turned over to Evans on account of its debt.
 
 
 14
 The district court held, and we agree, that Evans is liable for Consolidated's debt to Witco by virtue of having received an unlawful dividend or distribution of assets of the liquidated corporation, as mandated by the Louisiana Business Corporation Law, La.R.S. 12:93(D), which reads as follows:
 
 
 15
 D. Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.
 
 
 16
 The cited provision provides a limitation of two years within which to bring an action in this regard and it is clear that the present suit is therefore timely. We accordingly reject the contention of Evans that the applicable law is found in Louisiana Civil Code articles 1987 and 1994 relative to contracts between a debtor and one of his creditors for the purpose of securing a just debt, providing therein a one-year limitation. These articles are set forth in the margin herein.[2]
 
 AFFIRMED IN PART; REVERSED IN PART.[3]
 
 
 *
 Senior District Judge for the Northern District of Texas, sitting by designation
 
 
 [1]
 We also find to be without merit Consolidated's alternative reason why damages should not be allowed, namely, that the contract between Witco and Consolidated should be reformed to limit liability to actual damages rather than consequential damages. The argument that Consolidated's personnel did not note the charge made by Witco in the contract and was misled thereby is unpersuasive
 
 
 [2]
 Louisiana Civil Code article 1987 reads as follows:
 Art. 1987. No contract made between the debtor and one of his creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor were insolvent to the knowledge of the creditor with whom he contracted, and although the other creditors are injured thereby, if such contract were made more than one year before bringing the suit to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another.
 Louisiana Civil Code article 1994 reads as follows:
 Art. 1994. The action given by this section, is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor; if brought by syndics or other representatives of the creditors collectively, to be counted from the day of their appointment.
 
 
 [3]
 A revised judgment should accordingly be entered by the district court in accordance with this opinion and pursuant to the mathematical formula which Judge Rubin established