**FARBWERKE HOESCHST A. G.,**
**Plaintiff-Appellee,**

v.

**M/V "DON NICKY", her engines, boilers, tackle, etc., et al., Defendants-Appellants.**

**ALBATROS SUPERFOSFAATFABRIEK-EN and Centraal Stikstof Verkoopkant-oor, Plaintiffs-Appellees,**

v.

**M/V "DON NICKY", her engines, boilers, tackle, etc., et al., Defendants-Appellants.**

**Nos. 77–2161, 77–2162.**

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1979.

Reginald M. Hayden, Jr., Miami, Fla., for defendants-appellants.

Roy V. Phillipps, Balboa, Canal Zone, for plaintiff-appellee in No. 77–2161.

Henry L. Newell, Balboa, Canal Zone, for plaintiffs-appellees in No. 77–2162.

Before GOLDBERG, SIMPSON and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The defendants in these consolidated admiralty cases, the M/V "Don Nicky" and its owner, Julio Zakzuk, appeal from the district court's entry of summary judgments and subsequent final judgments in favor of separate shippers of fertilizer adjudicating defendants liable for a total of $141,081.46 for cargo damage. After separate hearings on the issue of liability, the court granted summary judgment motions of plaintiffs Farbwerke Hoeschst A. G. and Albatros Superfosfaatfabrieken on December 2, 1976, and February 24, 1977, respectively. Final judgment based on a consolidated damages hearing was entered on March 16, 1977. We reverse and remand for a full trial.

The undisputed facts establish that the plaintiff shippers delivered to the M/V "Don Nicky," a cargo vessel of Panamanian registry, bagged chemical fertilizer to be transported from Rotterdam, Holland, to Panama. All cargo was shipped on the same voyage to the same consignee but was carried under several bills of lading, which indicated that the cargo was received by the "Don Nicky" in Rotterdam in good order and condition. During the voyage, salt water entered the hold and damaged 18,925 of the total 52,765 bags of fertilizer.

Farbwerke initially contends that this appeal is untimely. The governing statute, 28 U.S.C.A. § 2107, provides:

In any action, suit or proceeding in admiralty, the notice of appeal shall be filed within ninety days after the entry of the order, judgment or decree appealed from, if it is a final decision, and within fifteen days after its entry if it is an interlocutory decree.

Notice of appeal was filed March 25, 1977. The district court had granted Farbwerke's motion for summary judgment and entered its order entitled "Interlocutory Judgment" on December 2, 1976. Farbwerke argues that § 2107 required defendants to file their appeal within fifteen days of this interlocutory order. We have previously held, however, that an appellant does not compromise its rights to review of interlocutory orders by waiting for a final judgment. *Caradelis v. Refineria Panama, S.A.*, 384 F.2d 589 (5th Cir. 1967); *Gloria Steamship Company v. Smith*, 376 F.2d 46 (5th Cir. 1967). Since these appeals were taken within the statutory ninety days from entry of the March 16 final judgment, this court has jurisdiction to review the entire proceeding.

Defendants urge this court to vacate the judgments against them since plaintiffs, the shippers, are not the real parties in interest. Shipments were made C.I.F.; therefore, title to the cargo passed upon delivery to the carrier, and the consignee bore the risk of loss in transit. *York-Shipley, Inc. v. Atlantic Mutual Insurance Co.*, 474 F.2d 8 (5th Cir. 1973). Yet the consignee, Coagra, was not a party to the action. The Federal Rules of Civil Procedure require every action to be prosecuted in the name of the real party in interest. F.R.Civ.P. 17(a). Plaintiffs argue that this principle is liberally construed in admiralty law so as to permit them to sue "as agents and trustees on behalf of and for the benefit of the parties who may be or become interested in the said cargo, as their interests may ultimately appear." The district court, in a pretrial motion hearing which defendants failed to attend, accepted plaintiffs' argument that defendants' "defense . . . about the real party doesn't go in admiralty." We disagree. The Federal Rules of Civil Procedure are fully applicable in admiralty cases. 7A Moore's Federal Practice ¶ .01 (2d ed. 1978). Plaintiffs point to early case authority which permitted admiralty suits by shippers as representatives when the real party was abroad or otherwise unavailable. *Aunt Jemima Mills Co. v. Lloyd Royal Belge*, 34 F.2d 120 (2d Cir. 1929); *United States v. United States Steel Products Co.*, 27 F.2d 547 (S.D.N.Y.1928). Those cases, however, permitted such representative suits only when the real party consignee had ratified the shipper's capacity to sue in its behalf. A shipper, after having parted with title to the goods, may not sue the carrier as trus-

tee for the consignee. To the contrary, this court in *York-Shipley, Inc. v. Atlantic Mutual Insurance Co., supra,* 474 F.2d 8, dismissed for lack of standing an action initiated by a shipper against the insurer of goods shipped C.I.F. The court found that the shipper's only interest in the suit was "that of an unsecured creditor of its foreign customer," and that it therefore had no insurable interest. Since the judgments entered must be vacated on other grounds, we direct the district court on remand to meet the requirement of F.R.Civ.P. 17(a) by joinder or ratification of the real party in interest.

Before granting Farbwerke's motion for summary judgment, the district court reviewed a sworn statement of the owner Zakzuk, relevant sections of the "Don Nicky's" Bridge Log Book, and affidavits of two experts who expressed their opinions of the seaworthiness of the "Don Nicky." Plaintiff's affiant, Captain Maxey, concluded, after reviewing Zakzuk's statement and the load-line certificate issued the "Don Nicky" at the time in question, that the ship was overloaded and her watertight doors were not watertight and that she was thus unseaworthy. In response, defendants presented the affidavit of Chet Holland, a marine surveyor and Master Mariner. In his opinion, the ship was not unseaworthy. While acknowledging that this conclusion was based on an out-dated load-line certificate, he nevertheless disagreed that the overloading as stated in Captain Maxey's affidavit would necessarily imply unseaworthiness. Other questions concerning liability appear in the sparse record before us. Zakzuk's statement indicated the ship had encountered bad weather and states that the cargo was to have been packaged in waterproof sacks. The district court found as a matter of law that the wind force was insufficient to absolve the carrier from liability but did not apparently consider the packaging question. It further concluded that the Bills of Lading did not incorporate limitations of liability written into the charter parties. The court did not, however, resolve an issue raised as to conflict of laws. Upon the information before it, the court

concluded in the Farbwerke case that the "Don Nicky" was unseaworthy because "she was loaded beyond her allowed marks and seawater went through her watertight doors, thus showing that said doors were not watertight," and entered summary judgment in Farbwerke's favor as to liability. The court then relied upon these same findings in later granting a similar summary judgment on liability to Albatros.

The district court's function, in a summary judgment proceeding, is not to resolve factual issues but to determine whether there exists a genuine issue of material fact. F.R.Civ.P. 56(c). In making its determination, the court may not weigh conflicting affidavits to resolve disputed fact issues. The legal conclusion of "unseaworthiness" rests upon factual determinations. *Horton & Horton, Inc. v. T/S J. E. Dyer,* 428 F.2d 1131 (5th Cir. 1970). One basis for the district court's conclusion that the "Don Nicky" was unseaworthy—the effect of the vessel's loading or overloading—appears to be disputed in the opposing affidavits. Although the court was not required, under F.R.Civ.P. 52(a), to enter findings of fact and conclusions of law upon entry of a summary judgment, such findings and conclusions are helpful to appellate review. *See Mosley v. Ogden Marine, Inc.,* 480 F.2d 1226 (5th Cir. 1973). If there was some rationalization or explanation which would have eliminated the apparent conflict in the affidavits here, an outline of the court's underlying reasoning could have prevented the necessity for reversal. However, as the record now stands, the motions for summary judgment appear to have resolved disputed issues of material fact and therefore both must fail.

Defendant also challenges the adequacy of the district court's findings and conclusions on the issue of damages. Since this issue was not resolved in a summary judgment proceeding, F.R.Civ.P. 52(a) mandates the recording of full findings of fact and conclusions of law. The court did not fulfill this obligation. Defendant sought to limit its responsibility for damages to the

cargo on the theory that the fertilizer was not properly packaged in watertight bags. Because the district court considered the issue material only to liability and thus untimely when first presented during the damages proceedings, it refused to admit testimony regarding packaging at the hearing on damages.

The record fails to disclose why the issue of improper packaging would not have affected the extent to which the cargo was damaged as well as whether any damage at all would have occurred. If there is such an effect on extent of damages, the amount of damages for which the defendants were liable would have been directly affected. Without the required findings and conclusions we cannot know whether the district court's reasoning was correct. Thus, the final judgments on damages must also be vacated.

The summary judgments on liability and the final judgments entered in these causes are vacated and the actions are remanded for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED WITH DIRECTIONS.